A00A1638. SWEEDER v. THE STATE.
(541 SE2d 414)

BLACKBURN, Presiding Judge.

Following a jury trial, John Sweeder appeals his conviction for three counts of burglary, contending: (1) the evidence was insufficient to support the verdict; (2) the trial court improperly admitted evidence of similar transactions; (3) the trial court failed to dismiss a biased juror; (4) the trial court improperly denied a motion for mistrial based on the State's failure to comply with reciprocal discovery requirements; and (5) the trial court improperly denied a motion for mistrial based on the testimony of a State witness which related to Sweeder's character. For the reasons set forth below, we affirm.

1. Sweeder argues that the evidence was insufficient to support the verdict against him.

On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict, and the appellant no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Howard v. State*, 261 Ga. 251, 252 (403 SE2d 204) (1991);

---

[3] See *Wall v. State*, 269 Ga. 506, 507-509 (2) (500 SE2d 904) (1998); *Temple v. State*, 238 Ga. App. 146, 147-148 (2) (517 SE2d 850) (1999).

*King v. State*, 213 Ga. App. 268, 269 (444 SE2d 381) (1994). Conflicts in the testimony of the witnesses, including the State's witnesses, are a matter of credibility for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld. *Searcy v. State*, 236 Ga. 789, 790 (225 SE2d 311) (1976). *Grier v. State*, 218 Ga. App. 637, 638 (1) (463 SE2d 130) (1995).

(Punctuation omitted.) *Hagood v. State*.[1]

Viewing the evidence in this light, the record shows that, on December 14, 1995, the home of James and Martha Shields was burglarized. The robber broke into the home through a back window, ransacked the interior, and stole numerous items, including jewelry and Christmas gifts. During the burglary, the robber broke a glass container full of coins and cut himself, leaving drops of blood on the floor and a bloody rag in the sink. A diamond ring taken in the burglary was later found on Sweeder and identified by James Shields. In addition, footprints discovered outside the Shieldses' home matched tennis shoes worn by Sweeder.

On January 4, 1995, the home of Ernest Wood III was also burglarized. Again, the robber broke into a window in the rear of the house, and he stole money and some personal items. One of the items taken from the home was a Georgia Bulldogs bag which contained seashells from a prior vacation taken by Wood and his family. Following the burglary, a man in a beige truck was seen placing this bag, which still contained the seashells, in a public dumpster. The witness to this incident reported that the tag number of the truck was SF 4805, which matched the tag number of the truck which Sweeder was driving that day.[2] A Playboy magazine taken from the Wood residence was also found in Sweeder's truck. In addition, Kenneth Hilburn, an acquaintance of Sweeder's, testified that, while both of them were in jail, Sweeder admitted to him that he had robbed the Woods' home.

The home of Jimmy and Diane Saunders was also burglarized on January 4, 1995. Shortly after discovering the theft, Mrs. Saunders saw two young white males coming out of the woods near her home. One was carrying items in a pink pillowcase in one hand and a strongbox taken from her home in the other. Mr. Saunders later observed a brownish-beige Toyota truck parked near his residence.

---

[1] *Hagood v. State*, 228 Ga. App. 693, 694 (2) (492 SE2d 606) (1997).

[2] The truck was owned by Sweeder's stepfather, Chet Barkoff, who testified that he let Sweeder borrow the vehicle on January 4, 1995. On that same day, Barkoff consented to a search of the truck.

Footprints matching the tennis shoes worn by Sweeder were found in the Saunderses' yard.

Also on January 4, 1995, Sweeder and his compatriot, Adam Sindell, visited Cory Hancock at his place of business. Sweeder was driving his stepfather's truck. Hancock, who had previously burglarized homes with Sweeder, noticed a pair of rubber kitchen gloves in the truck. Hancock testified that they were the same type of gloves Sweeder had used to commit prior burglaries.

Sindell testified that, on January 4, 1995, Sweeder visited him at his home. When Sweeder got there, he showed Sindell a cut on his hand, explained that he had cut himself while burglarizing a house earlier in the day, and asked whether the bloodstains left behind could be traced back to him. Sindell confirmed that he and Sweeder then went to visit Hancock, and, on the way there, Sweeder stopped at a dumpster and asked Sindell to throw the Georgia Bulldogs bag in the back of his truck into the dumpster. Finally, Sindell testified that he assisted Sweeder in robbing the Saunderses' home later that day.

Sweeder was arrested for the burglaries on January 6, 1995. At the time of his arrest, he was wearing several pieces of jewelry stolen from the Saunderses' home.

Taken as a whole, the evidence was sufficient to support Sweeder's conviction.

2. Sweeder contends that the trial court erred in admitting similar transaction evidence of five prior burglaries to which he pled guilty. We disagree.

Before evidence of an independent offense or act may be admitted into evidence, the State is required to: (1) demonstrate that it seeks to introduce the similar transaction for an appropriate purpose, such as illustrating the defendant's identity, intent, course of conduct, or bent of mind; (2) show sufficient evidence to establish that the accused committed the independent offense or act; and (3) demonstrate a sufficient connection or similarity between the independent offense or act and the crime charged so that proof of the former tends to prove the latter. *Williams v. State*.[3]

> The law[, however,] does not require that a similar transaction crime be identical to the crime charged. There can be a substantial variation of circumstances where there exists a logical connection between crimes which are essentially dissimilar. The issue of admissibility of extrinsic transactions has never been one of mere similarity. It is,

---

[3] *Williams v. State*, 261 Ga. 640 (409 SE2d 649) (1991).

rather, relevance to the issues in the trial of the case. The State may only have the burden of showing a *logical connection* between crimes which are essentially dissimilar.

(Punctuation omitted.) *Maxey v. State*.[4]

In this case, the similar transaction evidence meets the first prong of the *Williams* test because it was introduced to show identity, course of conduct, and bent of mind. Second, the similar transactions were based on guilty pleas, and the certified copies of the convictions were admitted into evidence. Therefore, there was sufficient proof that Sweeder committed the acts in question, and, on appeal, Sweeder admits to committing these prior acts. Third, through the testimony of multiple witnesses, the State showed a sufficient connection between the similar transaction evidence and the crimes for which Sweeder was being tried. All of the burglaries were of residential homes in secluded areas. All were done during the daytime, included forced entry into the rear of the home, and involved the theft of similar articles.

3. Sweeder contends that the trial court erred by denying his motion to dismiss an impaneled juror who witnessed him in handcuffs and shackles outside the courthouse.

The record shows that Jorge Mangual, a juror, saw Sweeder being led to a police car waiting to transport him away from the courthouse. Sweeder was wearing handcuffs and shackles at the time. Following the incident, Mangual was questioned regarding the impact of what he had witnessed. He stated that the incident would have no bearing at all on his deliberations and that he would judge Sweeder's guilt based solely on the evidence presented to him. The trial court thereafter instructed Mangual not to discuss the incident with any of the other jurors.

OCGA § 15-12-172 provides:

If at any time, whether before or after final submission of the case to the jury, a juror dies, becomes ill, upon other good cause shown to the court is found to be unable to perform his duty, or is discharged for other legal cause, the first alternate juror shall take the place of the first juror becoming incapacitated.

Legal cause arises when the court determines, in its sound discretion, that the juror holds an opinion so fixed and definite that he or she cannot lay it aside and decide the case based on the evidence

---

[4] *Maxey v. State*, 239 Ga. App. 638, 640-641 (3) (521 SE2d 673) (1999).

presented and the court's charge. *Kirkland v. State*.[5]

In this case, Mangual testified that his observation of Sweeder in handcuffs and shackles would not affect him. Therefore, the trial court did not abuse its discretion in refusing to dismiss him as a juror. *Hardy v. State*.[6]

4. Sweeder contends that the trial court erred by denying his motion for a mistrial based on the State's failure to comply with the discovery requirements of OCGA § 17-16-7.[7] Specifically, Sweeder argues that the State failed to give him notice that its witness, who saw Sindell discarding the Georgia Bulldogs bag in a dumpster, had provided the police with an oral statement identifying the tag number of Sweeder's truck. Although the State had provided Sweeder with a summary of this witness' testimony, the information concerning the tag number was omitted.

Pretermitting the efficacy of Sweeder's argument on this point, even if error exists, it is not reversible error. In light of the overwhelming evidence against Sweeder, it is highly probable that any error, assuming it existed, did not contribute to the jury's verdict in this case. *Marshall v. State*.[8] Moreover, other witnesses, including Sindell and Sweeder's stepfather, testified that Sweeder was driving the truck on the day in question.

5. Finally, Sweeder contends that the trial court erred by denying his motion for a mistrial after a State witness placed his character into evidence. Specifically, Sweeder contends that Hilburn, while being cross-examined by him, improperly testified that Sweeder was in jail with him when he confessed the burglary of the Woods' home.

Following this testimony, the trial court denied Sweeder's motion for mistrial and instructed the jury to disregard the comment that Sweeder was in jail at the time this confession occurred.

> [E]ven if the testimony were improper, the trial court did not err in denying the motion for mistrial and giving curative instructions. Whether to grant a mistrial based on improper character evidence is within the discretion of the trial judge. In reviewing the trial court's decision, an appellate court may consider the nature of the statement, the other evidence in the case, and the court's and counsel's action in dealing with the impropriety. . . . In light of the

---

[5] *Kirkland v. State*, 271 Ga. 217, 219 (2) (518 SE2d 687) (1999).

[6] *Hardy v. State*, 240 Ga. App. 115, 118 (4) (d) (522 SE2d 704) (1999).

[7] OCGA § 17-16-7 provides, in relevant part, that "the prosecution . . . shall produce for the opposing party any statement of any witness that is in the possession, custody, or control of the [S]tate or prosecution . . . that relates to the subject matter concerning the testimony of the witness."

[8] *Marshall v. State*, 230 Ga. App. 116, 119 (2) (495 SE2d 585) (1998).

overwhelming nature and sheer volume of the evidence against [Sweeder], it is extremely doubtful that a single reference to [Sweeder's incarceration] would have materially influenced the jury's decision whether to acquit or convict. Accordingly, we cannot say that the trial judge's decision to deny a mistrial and instead issue curative instructions was an abuse of discretion.

(Punctuation omitted.) *Gibson v. State*.[9]

Moreover, evidence of Sweeder's incarceration was admitted both before and after Hilburn's testimony. In his opening argument, Sweeder's counsel indicated that Hilburn was in jail when he spoke to Sweeder. In addition, following Hilburn's testimony, Sindell testified that Sweeder had also confessed to him when they were both incarcerated, and Sweeder made no objection to this evidence. Accordingly, this enumeration is meritless.

*Judgment affirmed. Eldridge and Barnes, JJ., concur.*

DECIDED OCTOBER 26, 2000.

*Jeffrey L. Grube*, for appellant.

*Kelly R. Burke, District Attorney, Amy E. Lambert, Assistant District Attorney*, for appellee.

---

[9] *Gibson v. State*, 233 Ga. App. 838, 841 (3) (505 SE2d 63) (1998).