A03A0968. BELYEU v. THE STATE.
(586 SE2d 396)

JOHNSON, Presiding Judge.

Willie Belyeu was tried before a jury and convicted of driving under the influence of alcohol and following too closely. He appeals, challenging the sufficiency of the evidence supporting his driving under the influence conviction, statements made by the prosecuting attorney during opening and closing arguments, and evidentiary rulings made by the trial court. The challenges are without merit, so we affirm the convictions.

1. On appeal from a criminal conviction, the evidence is viewed in the light most favorable to support the verdict and the appellant is no longer presumed innocent.[1] We do not resolve issues of witness

---

[1] *Fuller v. State*, 256 Ga. App. 840, 842 (2) (570 SE2d 43) (2002).

credibility or weigh the evidence.[2] Rather, we determine only if there is sufficient evidence from which a rational trier of fact could have found the appellant guilty beyond a reasonable doubt of the crimes charged.[3]

Viewed in favor of the verdict, the evidence in this case shows that at 4:00 a.m., on September 29, 2001, Belyeu crashed his car into the back of a flatbed wrecker truck in Atlanta. The car lodged under the truck, trapping Belyeu inside the car. A police officer arrived at the accident site and called for emergency personnel to come to the scene.

While waiting for emergency personnel to arrive, the officer spoke with Belyeu. The officer noticed an odor of alcohol coming from Belyeu, and that Belyeu's speech was slurred. Emergency personnel then arrived, removed Belyeu from the car, and placed him on a stretcher. Once Belyeu was out of the car, the officer noticed a stronger odor of alcohol coming from him.

A paramedic who helped carry the stretcher to an ambulance also smelled alcohol coming from Belyeu's person. The paramedic noticed that Belyeu's eyes were reddened, that he was disoriented, and that his speech was slurred. In the paramedic's opinion, Belyeu had consumed alcohol and was impaired.

Belyeu was taken to Grady Hospital, where the officer questioned Belyeu about the accident. Throughout the questioning the officer continued to notice the odor of alcohol coming from Belyeu's breath and person. The officer asked him if he had drunk any alcoholic beverages, and Belyeu said that he had drunk two beers. In the officer's opinion, Belyeu had consumed more than two beers prior to the accident.

Belyeu also had a prior similar accident. At approximately 3:00 a.m. on October 31, 1999, Belyeu drove his vehicle into the rear end of another vehicle. Belyeu fled from the scene of the collision, but two passengers in the car that had been hit chased him and brought him back to the scene. A police officer investigating the accident smelled alcohol on Belyeu's breath and noticed that his eyes were red. Belyeu was charged with, and pled guilty to, driving under the influence of alcohol.

Having reviewed all the evidence in the light most favorable to the verdict, we find sufficient evidence from which a rational trier of fact could have found Belyeu guilty of driving under the influence of alcohol to the extent that he was a less safe driver.[4]

---

[2] Id.

[3] *Young v. State*, 242 Ga. App. 681, 682 (1) (530 SE2d 758) (2000).

[4] See *Kelly v. State*, 242 Ga. App. 30, 31 (1) (528 SE2d 812) (2000); *Davidson v. State*, 237 Ga. App. 580, 581 (1) (516 SE2d 90) (1999).

2. Belyeu claims that he was entitled to a mistrial because the state failed to introduce evidence to support its opening statement that he had refused to take a state-administered alcohol test. In support of his claim, Belyeu cites the case of *Alexander v. State*.[5] In that case, the Supreme Court reversed a murder conviction because the prosecutor said in his opening statement that the shooting in question was gang-related, but he later made no attempt to introduce evidence of gang activity.[6] The Supreme Court noted, however, that a criminal conviction will not be reversed where a prosecutor makes an improper opening statement in good faith and the trial court gives a curative instruction to the jury.

We have held that a prosecutor should confine his opening statement to an outline of what he expects admissible evidence to prove at trial, and that if a prosecutor departs from these guidelines, a conviction will not be reversed if the prosecutor acted in good faith and if the trial court instructs the jury that the prosecutor's opening statement is not evidence and has no probative value.[7]

In the instant case, the prosecutor said at the end of his opening statement to the jury: "You're going to hear that Mr. Belyeu was transported to Grady and he was given the opportunity to take a State test and he refused that test. You're going to hear what that refusal means as well." Thereafter, during the presentation of the state's case, the prosecutor attempted to introduce testimony from the arresting officer about Belyeu's refusal to take the test. Belyeu objected to the offered testimony, and the court then held a hearing outside the jury's presence to determine the admissibility of the testimony.

During that hearing, the officer testified that he had read the implied consent warning to Belyeu at the hospital, and that Belyeu had refused to take a state-administered test. When the prosecutor asked if the officer had his implied consent warning card with him in court, the officer indicated that he did not have it because he was off duty. The prosecutor produced a copy of an implied consent warning card, and the officer identified it as being identical to the one he carries when he is on duty. The officer then read that implied consent warning into the record.

Subsequent testimony, however, revealed that the card read into the record had been issued to the officer about three months after the

---

[5] 270 Ga. 346 (509 SE2d 56) (1998).
[6] Id. at 348-351 (2).
[7] (Footnote omitted.) Id. at 349 (2).

date of Belyeu's arrest. On the date in question the officer actually read to Belyeu a prior version of the implied consent card. The prosecutor stated that he also had a copy of that prior version of the card, and the officer confirmed that he had previously been issued that prior version of the card.

At that point, the trial court ruled that it would not allow evidence of Belyeu's refusal to take the test and that it would instruct the jury to ignore the prosecutor's reference to the refusal during his opening statement. Belyeu moved for a mistrial, which the trial court denied. The court then instructed the jury to disregard, and not consider as evidence, the prosecutor's mentioning of the refusal. Belyeu did not object to the curative instruction.

The instant case is materially different from, and thus not controlled by, *Alexander*. Whereas the prosecutor in that case made no attempt to introduce evidence mentioned in the opening statement, the prosecutor here planned and attempted to introduce the evidence of Belyeu's refusal to take the state-administered alcohol test. Moreover, there is no indication that the prosecutor here acted in bad faith in mentioning such evidence in his opening statement. On the contrary, it appears from the record that he fully anticipated introducing such evidence and made a good faith effort to do so.[8] Once that effort was undermined by the off-duty officer's failure to bring the correct implied consent card to court, the judge gave a curative instruction directing the jury to disregard the prosecutor's reference to Belyeu's refusal of the test. Given the state's good faith effort to introduce the evidence mentioned in its opening statement and the trial court's curative instruction, we find no error in the denial of Belyeu's motion for a mistrial.[9]

3. Belyeu complains that the trial court erred in allowing the state to inject evidence of an unrelated crime during testimony about Belyeu's prior similar offense of driving under the influence of alcohol. Belyeu does not challenge the admissibility of the prior offense as a similar transaction. Rather, he claims only that the state's similar transaction witness, a police officer, improperly attacked his character by testifying that Belyeu had fled from the scene of the motor vehicle collision involved in the earlier offense. Belyeu, however, did not object to the officer's similar transaction testimony on this ground at trial. Because Belyeu did not timely raise such an objection at trial, he may not raise it for the first time on appeal.[10]

---

[8] See *Lackes v. State*, 274 Ga. 297, 300-301 (3) (553 SE2d 582) (2001) (prosecutor's statements regarding evidence later suppressed by court were made in good faith).

[9] See generally *Ramirez v. State*, 276 Ga. 249, 251 (3) (577 SE2d 558) (2003).

[10] See *Hartman v. State*, 266 Ga. 613, 614 (2) (469 SE2d 163) (1996).

4. Belyeu argues that the trial court erred in allowing the paramedic to give his opinion that Belyeu was impaired by alcohol. "[A] witness who satisfactorily shows that he had [the] opportunity to observe, and did observe, the condition of another, may testify whether that person was under the influence of intoxicants and the extent thereof, stating the facts upon which the opinion is based."[11] Here, the paramedic testified that he spent 40 minutes with Belyeu, during which he observed that Belyeu smelled of alcohol, had red eyes, seemed disoriented, and had slurred speech. Based on these observations over a 40-minute period, the trial court did not err in allowing the paramedic to give his opinion that Belyeu was impaired.[12]

5. Belyeu contends the court erred in allowing the state to make an improper closing argument which asked the jurors to put themselves in the position of being a victim. During his closing, the prosecutor said, "Think to yourself would you want to be out on the highway with a person in that condition driving." In response to the argument, Belyeu's attorney stated, "Objection." He did not, however, specify a ground for the objection, and he did not obtain a ruling from the trial court on the purported objection. Absent a specific ground for objection[13] and absent a ruling by the trial court,[14] there is nothing for us to review.

*Judgment affirmed. Eldridge and Mikell, JJ., concur.*

DECIDED AUGUST 12, 2003.

*Steven W. F. West, Kevin J. Jones*, for appellant.
*Joseph J. Drolet, Solicitor-General, Katherine Diamandis, Assistant Solicitor-General*, for appellee.

---

[11] (Citation, punctuation and emphasis omitted.) *Chance v. State*, 193 Ga. App. 242 (1) (387 SE2d 437) (1989).

[12] See *Church v. State*, 210 Ga. App. 670, 671 (2) (436 SE2d 809) (1993); *Alvarado v. State*, 198 Ga. App. 887, 888-889 (403 SE2d 463) (1991).

[13] *Miller v. State*, 243 Ga. App. 764, 767-768 (10) (533 SE2d 787) (2000) (an objection based on a specific ground must be made in the trial court to preserve the issue for appellate review).

[14] *Parnell v. State*, 260 Ga. App. 213, 220 (9) (581 SE2d 263) (2003) (absent a ruling by the trial court there is nothing for appellate court to review).