## A04A0558. STANDFILL v. THE STATE.
### (600 SE2d 695)

MIKELL, Judge.

After a jury trial, David Gerald Standfill was convicted of burglary and possession of tools for the commission of a crime. Standfill was sentenced to fourteen years to serve on the burglary conviction and five years to serve on the possession conviction, to run concurrently. On appeal, Standfill argues that the trial court erred by admitting similar transaction evidence and by failing to exclude an allegedly impermissibly suggestive photographic lineup. He also challenges the sufficiency of the evidence. We affirm.

Where the sufficiency of the evidence is questioned on appeal, we determine "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[1] As an appellate court, we do not weigh the evidence or assess witness credibility.[2]

---

[1] (Punctuation and emphasis omitted.) *State v. Clay*, 249 Ga. 250 (1) (290 SE2d 84) (1982), citing *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SC 2781, 61 LE2d 560) (1979).

[2] *Miller v. State*, 208 Ga. App. 547 (1) (430 SE2d 873) (1993).

Reviewed in the light most favorable to the prosecution, the evidence shows that Brenda Cross, an employee of Kmart, was working the night shift on August 20, 2000, and heard a noise between 3:30 and 4:30 a.m. Cross testified that she walked to the jewelry counter, where she saw the defendant behind the counter, trying to pry open the lock with a knife. Cross asked the defendant if she could help him with something and how he entered the building. He told her that he entered through the front door, which she knew was impossible because the doors were locked each night from 10:00 p.m. to 6:00 a.m. Cross asked the defendant to walk with her to the phone at the front of the building. When Cross picked up the phone, the defendant ran away. Another employee called the police, and Cross described the perpetrator as a white male with red hair and a bad complexion. At trial, Cross testified that she was absolutely sure that the defendant was the man in the store that night. A few days later, another employee noticed that a plexiglass window had been removed and several pallet stacks were positioned under the open window.

Detective Cecilio Medina was assigned to investigate the case. Detective Medina testified that he was also responsible for the investigation of a bank robbery that had occurred on August 8, 2000. In the course of that investigation, he located a witness, Jeff Bell, who was walking home from work at approximately 6:00 a.m. when he heard the bank alarm. The perpetrator walked by Bell carrying a tan or beige cash register, which protruded from his shirt. Bell told the man that he should hurry home, and the man turned around and looked at him. Bell called the police from a nearby pay phone to report the robbery. Bell testified that the man he saw was tall, skinny, and had red hair. At trial, Bell identified Standfill as the man he saw that night.

Officer Howard Frye testified that he responded to the burglar alarm at the bank and upon his arrival found the glass pane broken out of one of the double doors. Several bank drawers had been pried open with a pair of scissors, and Officer Frye later learned that a tan coin changer had been stolen. While Officer Frye went to the bank, Officer Pavliscsak was canvassing the area looking for a suspect. She gave Officer Frye a description of a person she saw. He was a white male, approximately five feet ten to eleven inches tall with a skinny build, blond hair, scruffy beard, and bad complexion.

The next day, Officer Frye encountered a man at approximately 5:30 a.m. who matched the description he had been given by Officer Pavliscsak, except the man had reddish-blond hair. This man identified himself as Standfill, gave his address, and explained that he was going to get a pack of cigarettes. However, Officer Frye knew that no stores were open in the area at that time. Officer Frye also testified

that Standfill lived approximately ten to fifteen minutes from the bank that had been robbed. Officer Frye thought Standfill was a possible suspect in the bank robbery, so he shared this information with Detective Medina.

Detective Medina testified that he talked with Standfill and obtained a photograph from him, which he used in a photographic lineup. When Detective Medina showed the lineup to Cross after reading her the "photographic showup admonition," she immediately identified Standfill, who was in position number five in the lineup. After reading the admonition to Bell, Detective Medina showed him the same lineup, except that he moved Standfill's picture since Bell was also a Kmart employee. Bell also picked out Standfill with no hesitation. Detective Medina testified that since then, Standfill has changed his appearance twice. Standfill was arrested and charged with both robberies.

1. In his first enumerated error, Standfill argues that the trial court erred by admitting the testimony about the bank robbery as similar transaction evidence. "Absent an abuse of discretion, we will not disturb a trial court's determination that similar transaction evidence is admissible."[3] We find no such abuse here.

> In order for similar transaction evidence to be admissible, the State must show (1) that it seeks to introduce evidence of the independent offense or act, not to raise an improper inference as to the accused's character, but for some appropriate purpose which has been deemed to be an exception to the general rule of inadmissibility, (2) that there is sufficient evidence to establish that the accused committed the independent offense or act, and (3) that there is a sufficient connection or similarity between the independent offense or act and the crime charged so that proof of the former tends to prove the latter.[4]

But there is no requirement that the other transaction be identical to the crime charged in every respect.[5] Rather, "[t]here can be a substantial variation of circumstances where there exists a logical connection between crimes which are essentially dissimilar."[6]

---

[3] (Citation omitted.) *Porter v. State*, 264 Ga. App. 526, 531 (4) (591 SE2d 436) (2003).

[4] *Frady v. State*, 245 Ga. App. 832, 834-835 (4) (538 SE2d 893) (2000), citing *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991).

[5] *Rice v. State*, 217 Ga. App. 456, 457 (1) (458 SE2d 368) (1995).

[6] *Sweeder v. State*, 246 Ga. App. 557, 559 (2) (541 SE2d 414) (2000).

Circumstantial proof may be used to prove the connection, which does not have to be proven beyond a reasonable doubt.[7]

In this case, the similar transaction evidence meets the first prong of the *Williams* test because it was offered to show the defendant's course of conduct, modus operandi, intent, bent of mind, scheme, plan, and motive for being in the store,[8] all of which are purposes for which similar transaction evidence may be admitted.[9] As to the second showing, there was sufficient proof that Standfill committed both crimes. Cross identified him as the man who committed the Kmart burglary, and Bell identified him as the man he saw walking away from the bank, while its alarm was sounding, with a cash register protruding from his shirt. As to the third showing, the state proved sufficient similarity between the offenses. During the Rule 31.3 (B) hearing, the state explained that both burglaries were committed within blocks of each other; that both places burglarized were businesses; that the defendant gained access in each instance through breaking or removing glass; and that metal instruments were used to attempt to break into drawers in both instances. Additionally, both crimes occurred in the early morning hours. Thus, the trial court did not abuse its discretion when it admitted the testimony about the bank robbery as similar transaction evidence.

2. Next, Standfill argues that his conviction should be reversed because the photographic lineup was impermissibly suggestive. Specifically, Standfill contends that only his picture actually matched the description given by Cross. We find no error.

Testimony concerning a pre-trial identification of a defendant is inadmissible if the identification procedure was impermissibly suggestive and, under the totality of the circumstances, the suggestiveness gave rise to a substantial likelihood of misidentification.[10] There is a two-step test to determine admissibility: "(1) whether there was an impermissibly suggestive photographic identification procedure, and (2) if so, whether under the totality of the circumstances this

---

[7] *Ferguson v. State*, 262 Ga. App. 28, 30 (2) (584 SE2d 618) (2003).

[8] When offered for these purposes, a lesser degree of similarity is required than when the similar transaction evidence is offered to prove identity. *Smith v. State*, 273 Ga. 356, 357 (2) (541 SE2d 362) (2001).

[9] *Reedman v. State*, 265 Ga. App. 162, 165 (5) (593 SE2d 46) (2003) (modus operandi); *Booth v. State*, 264 Ga. App. 393, 394 (1) (590 SE2d 789) (2003) (plan, scheme); *Smith*, supra at 357 (2) (motive); *Sweeder*, supra at 559 (2) (intent, course of conduct, bent of mind).

[10] *Clark v. State*, 271 Ga. 6, 12 (7) (b) (515 SE2d 155) (1999), citing *Neil v. Biggers*, 409 U. S. 188 (93 SC 375, 34 LE2d 401) (1972); *Reid v. State*, 210 Ga. App. 783, 786 (2) (437 SE2d 646) (1993).

resulted in a substantial likelihood of irreparable misidentification."[11] An identification procedure is deemed impermissibly suggestive when it "is the equivalent of the authorities telling the witness 'This is our suspect.' "[12]

Standfill contends that he was the only suspect in the lineup who was thin and had red hair. The record shows, however, that three of the six photographs were of men with red hair; that Officer Medina did not suggest to the witnesses that Standfill was the perpetrator but simply read the standard form to them and asked them to look at the pictures; that all of the men pictured were approximately the same age; that Cross and Bell identified Standfill immediately when shown the lineup; and that they both identified him at trial.[13] We agree with the trial court that the lineup was not impermissibly suggestive. Accordingly, we need not inquire into the likelihood of an irreparable misidentification.[14]

3. Lastly, Standfill challenges the sufficiency of the evidence as to both convictions. We find that the evidence authorized a rational trier of fact to find Standfill guilty beyond a reasonable doubt.[15]

A person commits a burglary when he enters or remains within the dwelling house of another or any building, without authority and with the intent to commit a felony or theft therein.[16] Cross testified that she encountered Standfill between 3:30 and 4:30 a.m. in Kmart, while he was trying to pry open the lock on a jewelry counter with a knife. She identified Standfill from a photographic lineup and at trial. The testimony of one witness is sufficient to establish a fact.[17] Cross's testimony, alone, was sufficient to support Standfill's burglary conviction.

Similarly, Cross's testimony, as stated above, along with that of Officer Medina, who testified that knives are sometimes used to commit burglaries, was sufficient to support Standfill's conviction for possession of tools for the commission of a crime. Standfill's argument that his conviction should be reversed because the knife was not

---

[11] (Citation and punctuation omitted.) *Jackson v. State,* 209 Ga. App. 53, 54 (1) (432 SE2d 649) (1993).

[12] (Citation omitted.) *Clark,* supra.

[13] See *Talley v. State,* 209 Ga. App. 79-80 (1) (432 SE2d 667) (1993) (photographic lineup was not impermissibly suggestive where three of the six men pictured had the same color hair as the defendant, all six were approximately the same age, the officer did not suggest that the defendant was one of the six, and the victim picked out his attacker within seconds).

[14] *Whatley v. State,* 266 Ga. 568, 569 (2) (468 SE2d 751) (1996); *Pennymon v. State,* 261 Ga. App. 450, 452 (3) (582 SE2d 582) (2003).

[15] See *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[16] OCGA § 16-7-1 (a).

[17] OCGA § 24-4-8.

located and because there was no fingerprint or other evidence that implicated him is simply unavailing.

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED MAY 27, 2004.

*Martin G. Hilliard*, for appellant.

*Spencer Lawton, Jr., District Attorney, Margaret E. Heap, Assistant District Attorney*, for appellee.