A04A0679. McIVORY v. THE STATE.
(601 SE2d 481)

ANDREWS, Presiding Judge.

Robert McIvory a/k/a Jowon Johnson appeals from the trial court's denial of his motion for new trial following his conviction by a jury of armed robbery, possession of a firearm during the commission of a felony, eluding police, and no driver's license in his possession. McIvory argues that both his pretrial identification and his in-court identification by Barbrey, the victim, should not have been allowed into evidence,[1] that his trial counsel was ineffective, and that the evidence was legally insufficient.

1. In his third and fourth enumerations, McIvory argues that the trial court erred in denying his motion for directed verdict and that the verdict is decidedly and strongly against the weight of the

---

[1] McIvory presented this issue by a motion to suppress rather than the appropriate motion in limine. See OCGA § 17-5-30; *Robinson v. State*, 208 Ga. App. 528, 530 (2) (430 SE2d 830) (1993).

evidence. Both address the legal sufficiency of the verdict and they are considered together. OCGA § 17-9-1; *Bright v. State*, 238 Ga. App. 876, 877 (1) (520 SE2d 48) (1999); *Towns v. State*, 185 Ga. App. 545 (365 SE2d 137) (1988).

Viewed with all inferences in favor of the jury's verdict, *Wilson v. State*, 233 Ga. App. 327, 328 (1) (503 SE2d 924) (1998), the evidence was that Robert Barbrey was planning to take his wife and two children to Disney World after work Monday and was cleaning out his plum colored Saturn in front of his Savannah home at 1:35 a.m. on Sunday, February 7, 2000. The area where his car was parked was well lighted with a porch light and two street lights illuminating the car. The windows were rolled up and the doors were locked. While gathering his tools in the car, Barbrey noticed five African-American young men of various heights and weights walking by his car. One was wearing a red hooded sweatshirt while the others had on dark clothing. Barbrey started his car as if he were leaving the area. When the young men had walked on, Barbrey turned off his car and continued cleaning it.

Barbrey was sitting in the driver's seat of the Saturn, which had tinted windows. Seconds after the five young men walked away, Barbrey heard the passenger door handle jiggle.[2] Immediately, Barbrey heard a tapping on the driver's window. As he looked toward the tapping, he saw McIvory wearing the red sweatshirt hood on his head, tapping on the window with a silver handgun with a black handle. McIvory told Barbrey to roll down the window, which he did. McIvory then leaned in the window until his face was only eight to twelve inches from Barbrey's. Barbrey looked straight into his eyes and noticed his facial features, including his complexion and his neatly trimmed facial hair. While face to face with McIvory, Barbrey was asked by him for his wallet. Barbrey explained that he did not have it, it was in the house. When Barbrey offered to go in and get it, McIvory asked him how much money was in it and Barbrey told him $30. When asked if anyone was in the house, Barbrey told McIvory his wife and kids were inside. McIvory then stated, "[i]t's not worth it. We'll take the car." Barbrey got out of the car when he was told to by McIvory. McIvory backed up so Barbrey could get out of the car and directed him to lie down on the sidewalk. As he walked around his car toward the sidewalk, Barbrey heard McIvory and Jackson discussing the controls for the car and Barbrey ran inside his house and called 911.

Corporal Hagan was on patrol and responded to Barbrey's house.[3]

---

[2] This was Romean Jackson, McIvory's co-defendant, who pled guilty.

[3] He was not the primary investigating officer, who was on his way.

He got a brief description from Barbrey of the two men, one dressed in a red sweatshirt with hood who was on the driver's side and had a weapon and the other man wearing dark clothing and taller than the man with the gun, seated on the passenger side. Barbrey also described his plum Saturn. At 3:07 a.m., approximately an hour and 30 minutes after the robbery, Hagan noticed a plum colored Saturn following a gold car. Discovering that the gold car had been stolen, Hagan began following the two cars. Barbrey's plum Saturn passed the gold car and drove away at a high rate of speed. Hagan saw the Saturn run a red light and then come to an abrupt halt near a police precinct. McIvory, wearing a red hooded sweatshirt, jumped out of the driver's side and began running. Jackson stayed in the passenger seat because another officer was pointing his gun at him. Hagan ran after McIvory and caught him hiding under a house. McIvory did not have a driver's license.

At the police station, a photo was taken of McIvory, still wearing the sweatshirt but with the hood down. This photo was placed in a photo array with five other photos of similar looking men, all African-American, approximately the same age as McIvory, all with similar hair lengths and facial hair. Barbrey was called down to the station approximately three hours after the robbery. After the detective read Barbrey the "Photographic Show-Up Admonition,"[4] Barbrey immediately selected McIvory's photo as the man on the driver's side with the gun and said he did most of the talking. He picked Jackson from a separate array as the man on the passenger side. Jackson was in fact several inches taller than McIvory.

Barbrey was then taken to retrieve his car, from which the speakers had been removed. As he was driving it home, he reached under the front seat and discovered a silver handgun, which he recognized as the one that had been pointed at him earlier by McIvory.

At trial, Barbrey also identified McIvory without hesitation and stated that his identification stemmed from the robbery itself.

Barbrey's speakers were found in co-defendant Jackson's closet. Jackson's girlfriend contacted Brown and asked him to sell the speakers to raise money for Jackson's bail.

A rational trier of fact could have found from the evidence that McIvory was guilty beyond a reasonable doubt of the charged offenses. *Anderson v. State*, 265 Ga. App. 428 (1) (594 SE2d 669) (2004).

---

[4] Including that the group of photos may or may not contain a picture of the person who committed the crime; that hairstyles, beards, and mustaches may be easily changed; and that photos may not always depict the person's true complexion which may be lighter or darker than the photo.

2. McIvory's first enumeration is that the trial court erred in denying his motion seeking to exclude Barbrey's pretrial identification from the photo array as well as his in-court identification of McIvory.

> It is error to allow testimony concerning a pre-trial identification of a defendant if the identification procedure was impermissibly suggestive and, under the totality of the circumstances, the suggestiveness gave rise to a substantial likelihood of misidentification. *Neil v. Biggers*, 409 U. S. 188 (93 SC 375, 34 LE2d 401) (1972); *Reid v. State*, 210 Ga. App. 783 (2) (437 SE2d 646) (1993). The taint which renders an identification procedure impermissibly suggestive must come from the method used in the identification procedure. *Sherman v. State*, 225 Ga. App. 869 (2) (485 SE2d 557) (1997). An identification procedure is impermissibly suggestive when it leads the witness to an "all but inevitable identification" of the defendant as the perpetrator (*Brewer v. State*, 219 Ga. App. 16 (6) (463 SE2d 906) (1995)) or, as was held in *Heyward v. State*, 236 Ga. 526 (224 SE2d 383) (1976), is the equivalent of the authorities telling the witness, "This is our suspect."

*Clark v. State*, 271 Ga. 6, 12 (7) (b) (515 SE2d 155) (1999).

(a) At the pretrial hearing on McIvory's motion, the trial court found that the identification procedure used in the array was not impermissibly suggestive. When ruling on the motion for new trial, however, the trial court concluded that, based on *Heng v. State*, 251 Ga. App. 274 (554 SE2d 243) (2001), the array was impermissibly suggestive. There, during two armed robberies, the Asian robber wore an unusual orange, sleeveless jacket which both victims had described. In the photo array, Heng was the only person wearing an orange, sleeveless jacket. Prior to being shown the photo array, one victim had been shown a $100 bill with distinctive writing on it, which had been taken from him in the robbery, along with a Glock similar to the one used. He therefore knew the police had someone in custody. The officer then opened the door, allowing this victim to see four Asian young men standing in front of a bench, with Heng wearing the orange sleeveless jacket. The victim identified Heng.

The second victim was shown a photo array of five young Asian males in which only Heng could be seen wearing a sleeveless orange jacket. Some of the other photos had been cropped so that no clothing was viewable.

Although this Court concluded that these pretrial displays were impermissibly suggestive, it was further determined that they did

not lead to a substantial likelihood of misidentification, based on *Jones v. State*, 273 Ga. 213, 216 (2) (539 SE2d 143) (2000).

The photographic display involving McIvory is included in the record before us and we agree with the trial court's initial conclusion that the display is not impermissibly suggestive. In addition to the facts regarding Barbrey's encounter with McIvory set out in Division 1, unlike in *Heng*, a sweatshirt with a hood is much more common than the sleeveless jacket and other actions of the officers there led to the impression that Heng was the suspect. Here, no such suggestive actions were taken. Barbrey stated that he was focused on McIvory because he had a gun pointed at him and that he identified him from the photo spread mainly by his facial features, not because he was wearing the red sweatshirt. Therefore, the array was not impermissibly suggestive. See *Williams v. State*, 275 Ga. 622, 623 (2) (571 SE2d 385) (2002); *Standfill v. State*, 267 Ga. App. 612 (600 SE2d 695) (2004); *Jones v. State*, 226 Ga. App. 428, 431 (3) (487 SE2d 62) (1997).

(b) Because the trial court later found the array impermissibly suggestive and proceeded to the second step of the analysis, i.e., whether, under the totality of the circumstances, the suggestiveness gave rise to a substantial likelihood of misidentification. In making this determination, we consider factors including the witness' opportunity to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. Based on these factors, we agree with the trial court's conclusion that it did not give rise to a substantial likelihood of misidentification.

Because of the short time period between the robbery and the array, Barbrey's memory of the events was fresh and even had there been a one-on-one showup of McIvory in the hooded red sweatshirt, under these circumstances, there was no substantial likelihood of misidentification. See, e.g., *Rogers v. State*, 265 Ga. App. 628 (595 SE2d 326) (2004); *Anderson v. State*, supra at 431 (3); *In the Interest of L. J. P.*, 258 Ga. App. 762, 765 (2) (b) (574 SE2d 839) (2002), aff'd, 277 Ga. 135 (587 SE2d 15) (2003).

3. In his second enumeration, McIvory, through new appellate counsel, argues that his trial counsel rendered ineffective assistance prior to and during the trial.

> The burden was on [McIvory] to establish that he received ineffective assistance of counsel (*Van Alstine v. State*, 263 Ga. 1 (426 SE2d 360) (1993)), and he was required to show that counsel performed deficiently and that, but for the

deficient performance, there was a reasonable likelihood that the outcome of the trial would have been different.

*Pittman v. State*, 274 Ga. 260, 264 (5) (553 SE2d 616) (2001), citing *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

Further, a trial court's finding that a defendant has been afforded effective assistance of counsel must be upheld unless that finding is clearly erroneous. *Jordan v. State*, 247 Ga. App. 551, 554 (2) (544 SE2d 731) (2001).

With the "clarity afforded by hindsight[,]" *Fambro v. State*, 164 Ga. App. 359 (3) (297 SE2d 111) (1982), appellate counsel raises six alleged errors of trial counsel, a criminal defense attorney for thirty years, including inadequate trial preparation and insufficient number of personal visits with McIvory.[5]

Suffice it to say that, even assuming error in any of these instances, there has been a total failure to show that, but for the claimed errors, there was a reasonable likelihood that the outcome would have been different. "Since an appellant claiming ineffective assistance of counsel must show both deficient performance and actual prejudice stemming from that deficiency, an insufficient showing on either of these prongs relieves the reviewing court of the need to address the other prong. [Cit.]" *Cain v. State*, 277 Ga. 309, 311 (4) (588 SE2d 707) (2003).

There was no error in the trial court's denial of the motion for new trial on this ground.

*Judgment affirmed. Miller and Ellington, JJ., concur.*

DECIDED JUNE 28, 2004 — ■

*Martin G. Hilliard*, for appellant.
*Spencer Lawton, Jr., District Attorney, Kimberly Rowden, Assistant District Attorney*, for appellee.

---

[5] McIvory acknowledged there had been four visits, and trial counsel testified there had been at least four.