## A05A1568. BARROW v. THE STATE.
(621 SE2d 537)

BERNES, Judge.

A Bulloch County jury convicted William Barrow of one count of burglary (OCGA § 16-7-1) and one count of possession of tools for the commission of crime (OCGA § 16-7-20). Barrow appeals from the denial of his motion for a new trial, contending that there was insufficient evidence to support his convictions. We affirm.

When reviewing a criminal defendant's claim that there was insufficient evidence to support his convictions, this Court reviews the evidence in the light most favorable to the prosecution. *Standfill*

*v. State*, 267 Ga. App. 612 (600 SE2d 695) (2004). "[W]e do not weigh the evidence or assess witness credibility." (Footnote omitted.) Id.

So viewed, the evidence adduced at trial reflects that in the early morning of May 4, 2003, Barrow, his girlfriend Valerie Arnold, and two of their acquaintances, Lee Plunkett and her boyfriend, traveled from Savannah to Statesboro in order to attend a party at a mobile home located in the Heritage Mobile Home Park. While at the party, David Maddox, who knew Barrow and considered him a friend, repeatedly told Barrow that he wanted to burglarize the mobile home located next door, which appeared to be empty.[1] The two men later agreed that they would attempt to break into the mobile home. Before doing so, Barrow returned inside the mobile home where the party was occurring, pulled the socks off a sleeping partygoer's feet, and placed the socks over his hands.

Maddox and Barrow walked over to the empty mobile home. Maddox attempted to pry open the window while Barrow attempted to enter through the back door. After Barrow successfully pried open the back door, the two men entered and "ransacked" the home. They seized several items from the home, including a coin bank, a CD player, a laptop computer, a gun cleaning kit, two shotguns, and a rifle. Maddox and Barrow began taking and loading stolen items into the trunk of the black Toyota in which Barrow had traveled to get to the party. Plunkett came over from the party and assisted Maddox and Barrow by removing a stolen stereo system from the empty mobile home and placing it in the trunk of the vehicle.

After the stolen items were placed in the trunk of the black Toyota, Maddox and Barrow returned to the party, bragging that they had burglarized the mobile home next door. Because of the ensuing commotion over the burglary, the hosts of the party asked Barrow and several others to leave. Headed for Savannah, Barrow, Arnold, Plunkett, and Plunkett's boyfriend left in the black Toyota. Maddox and two of his acquaintances followed after them in a Jeep Cherokee.

As the vehicles left the mobile home park, Arnold and Plunkett began to argue about the burglary, resulting in a violent physical altercation. The black Toyota pulled off of the road, Plunkett threw part of the stereo system out of the trunk into a nearby ditch, and Barrow and Arnold, bruised and bloodied, exited from the vehicle. The Jeep Cherokee pulled over in front of the black Toyota, and the guns and several other stolen items were transferred from the trunk

---

[1] The mobile home was empty at the time because one of the occupants was attending a music festival in Atlanta, and his roommate was at Camp LeJeune, North Carolina, on active duty as a reservist with the National Guard.

of the black Toyota to the Jeep Cherokee. The two vehicles then drove off, while Barrow and Arnold remained on the side of the road.

A passerby who had witnessed the fight between Arnold and Plunkett called the police. Officers with the Statesboro Police Department and Bulloch County Sheriff's Department responded to the call, stopped the black Toyota a short distance from where the fight had occurred, and detained Plunkett and her boyfriend for further questioning. The officers later searched the vehicle and seized several items in the trunk that had been stolen from the mobile home.

The officers also located and detained Barrow and Arnold, who were found standing together on the road near where the officers subsequently recovered part of the stolen stereo system. Barrow had a bent knife on his person. The knife carried by Barrow was later found to be consistent with pry marks located on the back door of the burglarized mobile home.

A few days later, Maddox and the two other occupants of the Jeep Cherokee were apprehended by the police in Savannah. One of the occupants led the police to the stolen firearms in a nearby abandoned home. The officers also learned that Maddox had sold several of the other stolen items brought back to Savannah in exchange for money and cocaine.

Subsequently, Maddox, Barrow, Arnold, Plunkett, Plunkett's boyfriend, and one of the other Jeep Cherokee occupants were indicted for burglary and other related crimes. On April 13, 2004, Barrow alone stood trial on charges of burglary and possession of tools for the commission of crime. Several of the individuals charged in the indictment pled guilty and testified on the State's behalf at Barrow's trial, including Plunkett and Maddox. Arnold, who also pled guilty, testified on behalf of the defense, and Barrow himself took the stand and testified to his version of events.

On appeal, Barrow contends that there was insufficient evidence to convict him. We disagree. Construing the evidence presented at trial in the light most favorable to the verdict, we conclude that any rational trier of fact could have found Barrow guilty beyond a reasonable doubt of the charged offenses. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

"A person commits a burglary when he enters or remains within the dwelling house of another or any building, without authority and with the intent to commit a felony or theft therein." *Standfill*, 267 Ga. App. at 616 (3), citing OCGA § 16-7-1 (a). The residents of the mobile home where the crime occurred testified that Maddox and Barrow were not authorized to enter their home, and they described the items that were taken from their home without permission. Maddox testified point blank that he "committed [the burglary] with William Barrow" and detailed Barrow's involvement in entering the empty

mobile home and taking items from the premises. Additionally, Plunkett testified that she saw Barrow with socks on his hands near the mobile home. Another witness who attended the party testified that he saw Barrow put the socks on his hands, saw him coming and going from the empty mobile home, and heard him bragging about the burglary. Given this testimony, there clearly was sufficient evidence upon which the jury could convict Barrow of burglary.

Likewise, there was sufficient evidence to convict Barrow of possession of tools for the commission of crime. OCGA § 16-7-20 (a) provides that "[a] person commits the offense of possession of tools for the commission of crime when he has in his possession any tool, explosive, or other device commonly used in the commission of burglary, theft, or other crime with the intent to make use thereof in the commission of a crime." Two police officers testified to the fact that Barrow had a knife on his person when detained. There was police testimony that the burglarized mobile home's back door frame had pry marks on it that were consistent with the knife obtained from Barrow. Furthermore, an investigator with the Bulloch County Sheriff's Department testified that based on his training and experience, the pry marks on the door frame were consistent with the knife seized from Barrow, and that the knife was of a type commonly used in burglaries. All of this testimony, when combined with Maddox's testimony concerning Barrow's participation in the burglary, provided the jury a sufficient factual basis upon which to convict Barrow of the charged offense. See *Standfill*, 267 Ga. App. at 616-617 (3) (testimony that defendant used knife to pry open counter top, combined with police testimony that knives are sometimes used to commit burglaries, provided sufficient evidence to convict defendant of possession of tools for the commission of crime).

It is true, as Barrow asserts, that there was conflicting testimony provided by many of the witnesses, and that there was testimony favorable to Barrow's version of events from witnesses such as Arnold. However, "[r]esolving evidentiary conflicts and inconsistencies, and assessing witness credibility, are the province of the factfinder, not this Court. As long as there is some evidence, even though contradicted, to support each necessary element of the state's case, this Court will uphold the jury's verdict." (Punctuation and footnotes omitted.) *Skaggs-Ferrell v. State*, 266 Ga. App. 248 (1) (596 SE2d 743) (2004).

*Judgment affirmed. Blackburn, P. J., and Miller, J., concur.*

DECIDED SEPTEMBER 16, 2005.

*Stephen B. Taylor*, for appellant.

*Richard A. Mallard, District Attorney, W. Scott Brannen, Assistant District Attorney*, for appellee.