## A06A2405. BILLS v. THE STATE.
(642 SE2d 352)

MIKELL, Judge.

Jeremiah Maurice Bills was convicted of robbery, false imprisonment (three counts), simple battery as a lesser included offense of aggravated assault, and theft by taking. He was sentenced to an aggregate total of 25 years to serve 15 years. On appeal from the order denying his motion for a new trial, Bills asserts that the evidence does not support the verdict; that the trial court erred in denying his motion to exclude photographic lineups from the evidence; and that the court erred in overruling his objection to the prosecutor's closing argument. We affirm.

1. Bills challenges the sufficiency of the evidence to support his convictions of robbery, false imprisonment, and theft by taking. "In evaluating the sufficiency of the evidence supporting a conviction, this court must view the evidence in the light most favorable to the verdict. The presumption of innocence no longer applies, and we do not weigh evidence or determine witness credibility."[1] We only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offenses beyond a reasonable doubt.[2]

So viewed, the evidence shows that on the morning the crimes took place, the victim was home on maternity leave with her six-week-old twin boys. She lived with her boyfriend, Michael Ingram, who was at work. While the babies were asleep on her bed, she gathered her laundry to put in her car. When the victim opened her apartment door, she saw a gloved hand. Immediately, she put her foot against the door to try and keep the perpetrator out. Three African-American males then pushed her door open. According to the victim, Bills pushed her against a wall and ordered her to walk back to her bedroom. He threatened to kill her and hurt her babies unless she cooperated. Bills did not attempt to obscure his face.

Bills carried a long butcher knife throughout the ordeal. At one point, the twins woke up, and the smaller one started crying. As the victim held him in her arms, Bills told her to "[g]et that baby to shut up," and he reached over, put his hand on the baby's chest, and shook him. The baby started crying harder, and the perpetrators finally allowed the victim to give the baby a bottle. The perpetrators stayed for an hour, eventually taking a diamond ring, a diamond tennis bracelet, an ATM card, medicine that had been prescribed for the victim following her C-section, and her 1999 BMW. They had found

---

[1] (Citation, punctuation and footnote omitted.) *Feldman v. State*, 282 Ga. App. 390 (638 SE2d 822) (2006).

[2] *Tucker v. State*, 275 Ga. App. 611 (621 SE2d 562) (2005).

the car keys in the apartment and demanded to know where the car was parked. Before the perpetrators left, they tied the victim's hands and feet together with wire. She managed to free herself sufficiently to call 911 and her boyfriend.

The victim was still bound by electrical cord when Detective Tim Ashley arrived at her apartment in response to her 911 call. He testified that the residence was "completely ransacked." Ashley learned that the victim had heard one of the perpetrators referred to as "Chris" and another as "Tu-Tu." Ashley also learned that a man named Chris had "hung around with" Anna Shepherd, who was a friend of the victim's boyfriend. Shepherd directed Ashley to Bills.

Ashley put together a photographic lineup, including Bills, and arranged for the victim to come to the police station to view it. The lineup was lying on Ashley's desk, and the victim was seated across from the desk. As soon as the victim saw the lineup, she grabbed her chest and began to hyperventilate. When she calmed down enough to communicate verbally, she picked Bills' photograph from the lineup and identified him as the first man who had entered her apartment on the previous day.

Shepherd, who had a brief romantic relationship with Bills, testified that the victim's boyfriend, Ingram, was her best friend and that she had bragged to Bills about Ingram's financial success. According to Shepherd, Bills asked her to take him to Ingram to rob him. Shepherd did not take Bills seriously.

(a) "A person commits the offense of robbery when, with intent to commit theft, he takes property of another from the person or the immediate presence of another . . . [b]y intimidation."[3] Bills claims that his conviction of this offense cannot be sustained because the property was not found in his possession, and the "only" evidence linking him to the crimes was the victim's identification testimony. These contentions are misplaced. "[T]he testimony of the victim as a single witness is sufficient to establish a fact. OCGA § 24-4-8."[4] Thus, the victim's testimony, standing alone, would have been sufficient to establish the elements of the offense of robbery. But in addition, her testimony was corroborated by that of Shepherd. Bills contends that Shepherd was not credible, because a defense witness, who had been a co-worker of Shepherd, testified that her reputation in the community was "[v]indictive, a troublemaker, a liar." "The credibility of a witness is a matter to be determined by the jury under proper

---

[3] OCGA § 16-8-40 (a) (2).

[4] (Citation omitted.) *Garrison v. State*, 273 Ga. App. 446, 447 (615 SE2d 253) (2005).

instructions from the court."[5] The jury was free to believe Shepherd and to disbelieve the defense witness. Construing the evidence in the light most favorable to the verdict, any rational trier of fact could have found Bills guilty of robbery beyond a reasonable doubt.[6]

(b) "A person commits the offense of false imprisonment when, in violation of the personal liberty of another, he arrests, confines, or detains such person without legal authority."[7] "This statute on its face does not require that the imprisonment be for a specific length of time; all that is required is there be an arrest, confinement or detention of the person, without legal authority against his or her will. A brief detention is sufficient."[8] Contrary to Bills' contention, evidence that the perpetrators bound the victim with electrical cord was sufficient for a jury to find that she was illegally detained against her will.[9] Similarly, the jury could have found that the babies were confined without legal authority during the hour-long ordeal. The evidence supports the verdict.[10]

(c) "A person commits the offense of theft by taking when he unlawfully takes . . . any property of another with the intention of depriving him of the property."[11] Bills was indicted for theft by taking the victim's BMW, and the jury was charged on the law of parties to a crime. The victim testified that the perpetrators took her keys and that when she freed herself sufficiently to look outside, her car was gone. "[T]here was sufficient competent evidence, both direct and circumstantial, to authorize the rational trier of fact to find appellant guilty as charged beyond a reasonable doubt" as a party to the crime of theft by taking.[12]

2. Bills argues that the trial court erred in denying his motion to suppress two photographic lineups. We disagree.

> Testimony concerning a pre-trial identification of a defendant is inadmissible if the identification procedure was impermissibly suggestive and, under the totality of the circumstances, the suggestiveness gave rise to a substantial

---

[5] *Acey v. State*, 281 Ga. App. 197, 198 (1) (635 SE2d 814) (2006), quoting OCGA § 24-9-80. See also *Feldman*, supra.

[6] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Garrison*, supra.

[7] OCGA § 16-5-41 (a).

[8] (Punctuation and footnote omitted.) *Grier v. State*, 276 Ga. App. 655, 658 (1) (624 SE2d 149) (2005).

[9] See *Feldman*, supra.

[10] *Jackson v. Virginia*, supra.

[11] OCGA § 16-8-2.

[12] (Citations, punctuation and footnote omitted.) *Garrett v. State*, 263 Ga. App. 310, 311 (587 SE2d 794) (2003).

likelihood of misidentification. . . . An identification procedure is deemed impermissibly suggestive when it is the equivalent of the authorities telling the witness "This is our suspect."[13]

In reviewing the denial of a motion to exclude a photographic lineup, "we construe the evidence most favorably to upholding the court's findings and judgment, and accept the court's ruling unless clearly erroneous."[14] Detective Ashley, who compiled the lineup, testified at the hearing on this issue that he selected photographs of African-American males with very little facial hair, because Bills was clean shaven, and that all of the men utilized were between the ages of 17 and 30. Ashley further testified that the victim saw the lineup lying on his desk before he could formally display it to her. According to Ashley, the victim was terrified; she clutched her throat and chest and hyperventilated. She explained that seeing Bills' photograph, which she identified immediately, caused this reaction. During her testimony, the victim indicated that she saw the faces of the perpetrators clearly when they were in her apartment; that she viewed the lineup less than 24 hours after the incident; and that as soon as she saw Bills' photograph, her knees buckled, and she began to cry and hyperventilate.

Bills contended that the identification procedure was impermissibly suggestive because his afro was higher than that of the other five men used in the lineup, and another man possibly appeared Hispanic, rather than African-American. Bills also objected that the victim was shown a second lineup shortly after the first one in an attempt to identify a second perpetrator, and the second lineup included four of the six photographs that were included in the first one, including Bills' photograph. In denying the motion, the trial court found that the immediacy and forcefulness of the victim's identification of Bills in the first lineup overcame any infirmities with regard to the fact that she viewed a second lineup containing his photograph. We agree. Moreover, the record shows such significant similarities among the six photographs utilized in the first lineup that it cannot be said that the trial court erred in rejecting the claim that the procedure was impermissibly suggestive.[15]

3. In his final enumeration of error, Bills argues that the trial court erred in overruling his objection to the prosecutor's closing

---

[13] (Punctuation and footnotes omitted.) *Standfill v. State*, 267 Ga. App. 612, 615-616 (2) (600 SE2d 695) (2004).

[14] (Citation and punctuation omitted.) *Sherls v. State*, 272 Ga. App. 152, 154-155 (3) (611 SE2d 780) (2005).

[15] See *Standfill*, supra.

argument. The prosecutor stated to the jury, "If you're going to let Jeremiah Bills walk, it follows it is necessary, factually and logically, that the only way you can do it is to affirmatively decide that [the victim] is a conspirator in the matter." The defense objected, contending that the prosecutor's argument was "not a true recitation of the facts." The court initially sustained the objection, ruling that the argument "foreclose[d] the province of the jury." The court, however, reversed its ruling and permitted the prosecutor to continue. Upon resuming his argument, the prosecutor clarified to the jury that he was "only endeavoring to argue to you what inferences that you should draw from the facts. . . . [Y]ou are the ultimate judge of the law and the facts[,] [a]nd anything that you decide . . . should not be based on what I personally think."

On appeal, Bills argues that the prosecutor's argument violated the "longstanding rule . . . that counsel may not state to the jury his or her personal belief about the veracity of a witness."[16] Bills, however, did not raise that specific objection in the trial court. "To preserve a specific point for appellate review, an objection based on that specific ground must be made in the trial court."[17] Therefore, having failed to raise the objection below, Bills has waived it for the purpose of appeal.

*Judgment affirmed. Blackburn, P. J., and Adams, J., concur.*

DECIDED FEBRUARY 21, 2007.

*Randall S. Estes*, for appellant.
*Daniel J. Porter, District Attorney, David K. Keeton, Assistant District Attorney*, for appellee.

---

[16] (Footnote omitted.) *Bolden v. State*, 272 Ga. 1, 2 (525 SE2d 690) (2000).

[17] (Footnote omitted.) *Miller v. State*, 243 Ga. App. 764, 767-768 (10) (533 SE2d 787) (2000). Accord *Belyeu v. State*, 262 Ga. App. 682, 686 (5) (586 SE2d 396) (2003) (defendant's failure to specify a ground for objection to prosecutor's closing argument waived issue for appeal).