## A07A1119. JACKSON v. THE STATE.
### (654 SE2d 137)

BERNES, Judge.

Following a jury trial, Marcus Jerome Jackson was convicted of armed robbery, rape, aggravated sodomy, aggravated assault and kidnapping. He appeals, arguing that the trial court erred in excusing two jurors prior to the voir dire examination, in denying his *Batson*[1] challenge to the state's exercise of its peremptory challenges, in restricting his opening statement and in denying his motion to suppress the victim's out of court identification. We find no error and affirm.

On appeal, we view the evidence and all reasonable inferences therefrom in the light most favorable to the jury's verdict. *Ellis v. State*, 282 Ga. App. 17 (1) (637 SE2d 729) (2006). So construed, the evidence showed that during the early morning hours of September 22, 2004, Jackson and his cousin, Lavar Bridges, entered a convenience store where the victim was working as a clerk. Both Jackson and Bridges had white shirts tied around their heads so that only their eyes were visible. The victim nevertheless recognized the two men because they had been in the store on several occasions. The men pointed their guns at the victim and demanded the store's money. The victim complied by opening the cash register. While Bridges was removing the money, Jackson dragged the victim at gunpoint to the restroom in the back of the store where he raped and sodomized her. Throughout the rape, the victim looked directly into Jackson's eyes.

After raping and sodomizing the victim, Jackson forced her to her knees, grabbed her head, and twisted her neck until it snapped. The victim fell to the floor and pretended to be dead. Jackson checked the victim's pulse several times, kicked her as she lay on the ground and

---

[1] *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986). In *Batson*, the United States Supreme Court held that the Equal Protection Clause of the United States Constitution prohibits a prosecutor from challenging potential jurors solely on account of their race. Id. at 97 (III) (C).

then left the store. As soon as the victim was sure that Jackson and Bridges were gone, she called 911.

When the police arrived at the scene, the victim told the investigating officer that she was familiar with both of the assailants and that she had previously reported one of the assailants to the police for making improper purchases on his employer's ATM card.

The investigating officer learned that Bridges had been the subject of the prior police report and, based upon the description given to him by the victim, developed Jackson as the second suspect. He then showed the victim a photographic lineup depicting six males whose faces were covered in the same manner as that of the assailants during the commission of the crimes. She immediately identified Jackson as her attacker based solely upon the appearance of his eyes, and later identified him in court. Although she was unable to identify Bridges using only his eyes, she was able to identify him in a full-face lineup.

Bridges subsequently entered a negotiated guilty plea to robbery and received a sentence of ten years, with four to serve in confinement. The remaining charges against him were dismissed. As part of the plea negotiation, Bridges agreed to testify against Jackson. At trial, Bridges admitted that he and Jackson robbed the store at gunpoint and that after he took the money from the register and fled, he waited in the car for Jackson, who remained inside with the victim.

1. Jackson challenges the trial court's dismissal of two jurors and contends that the trial court erroneously denied his *Batson* challenge to the state's exercise of two peremptory strikes. We note that although voir dire was not transcribed, both the judge and the state explained the reasons underlying their decisions on the record. We address each of Jackson's complaints in turn.

(a) Jackson argues that the trial court erred when it excused two jurors without first allowing the parties to voir dire or otherwise inquire into the jurors' qualifications. We disagree.

The determination of whether to excuse a juror from service for either hardship or cause lies squarely within the broad discretion of the trial court. *Stewart v. State*, 277 Ga. 768, 770 (3) (596 SE2d 143) (2004); *Gulley v. State*, 271 Ga. 337, 344 (7) (519 SE2d 655) (1999); *Dorillas v. State*, 224 Ga. App. 336, 337 (1) (a), (b) (480 SE2d 351) (1997). The trial court explained that it dismissed prospective juror number 18 because the juror had stated in open court that she was a college student and was in the process of taking final exams. The legislature has specifically authorized the excusal of a juror on this ground. OCGA § 15-12-1 (a) (2) (students "shall be excused" from jury duty during their enrollment in postsecondary school and/or the taking of exams). See also *Sealey v. State*, 277 Ga. 617 (8) (593 SE2d 335) (2004).

The trial court further explained that it excused prospective juror number 29 because the juror had informed the court that her nephew had recently been sentenced to serve 50 years in prison, that the trial judge himself had sentenced her nephew, and that she would not be able to be fair to anyone involved in the case. Under these circumstances, the trial court did not abuse its discretion by dismissing the juror for cause. OCGA § 15-12-1 (a) (1); *Bly v. State*, 286 Ga. App. 43, 45 (2) (648 SE2d 446) (2007) (trial court did not err by excusing juror for cause who testified that she knew the defendant and could not be fair to both sides); *Bell v. State*, 276 Ga. 206, 207 (2) (576 SE2d 876) (2003) (juror who had been employed with a criminal defense firm was properly dismissed for cause after he stated it would be impossible for him to give the state a fair hearing); *Munn v. State*, 263 Ga. App. 821, 824 (4) (589 SE2d 596) (2003) (no error in excusing juror for cause who revealed a bias against the state); *Mulvey v. State*, 250 Ga. App. 345, 348 (3) (551 SE2d 761) (2001) (noting that "a trial judge should err on the side of caution by dismissing, rather than trying to rehabilitate, biased jurors") (citation and punctuation omitted). Accord *Robles v. State*, 277 Ga. 415, 419-420 (4) (589 SE2d 566) (2003); *Roberts v. State*, 276 Ga. 258, 260 (3) (577 SE2d 580) (2003); *Smith v. State*, 272 Ga. 874, 879 (5) (536 SE2d 514) (2000); *Felton v. State*, 270 Ga. App. 449, 451 (1) (606 SE2d 649) (2004).

Jackson nevertheless claims that the trial court was obligated to first allow his counsel to voir dire the jurors before their dismissal.[2] The record before us, however, does not show that Jackson moved the trial court for the opportunity to independently question the jurors prior to their excusal, and his failure to do so waives this issue on appeal. *Bly*, 286 Ga. App. at 45 (2).

Finally, Jackson's claim that he was entitled to have these particular jurors "put upon" him because they happen to be part of the original panel of potential jurors is unavailing. See OCGA § 15-12-161. "A defendant is entitled to an array of properly drawn, impartial jurors to which he may direct his peremptory challenges. A party is entitled to this as a matter of right; but, conversely, he is entitled to no more." (Citations and punctuation omitted.) *Thompkins v. State*, 181 Ga. App. 158, 160 (3) (351 SE2d 475) (1986). See OCGA §§ 15-12-160, 15-12-165; *Rucker v. State*, 135 Ga. App. 468, 470-471 (2) (218 SE2d 146) (1975), overruled on other grounds, *Keaton v. State*, 253 Ga. 70 (316 SE2d 452) (1984). Jackson was afforded this right.

---

[2] The jurors were dismissed in open court prior to the commencement of the voir dire examination. As such, these jurors were not part of the 30 jurors "put upon" Jackson. OCGA §§ 15-12-160; 15-12-161.

(b) Jackson also contends that the trial court erred in denying his *Batson* challenge to the state's two peremptory strikes upon African-American jurors.

> The three-step procedure for analyzing a *Batson* challenge is well known: The opponent of a peremptory challenge must make a prima facie showing of racial discrimination; the burden of production shifts to the proponent of the strike to give a race-neutral reason for the strike; the trial court then decides whether the opponent of the strike has proven discriminatory intent.

(Citation omitted.) *Floyd v. State*, 281 Ga. App. 72 (635 SE2d 366) (2006). "With regard to the question of discrimination, the court should consider the totality of the circumstances related to the *Batson* claim." (Citation omitted.) *Young v. State*, 272 Ga. App. 304, 306 (1) (b) (612 SE2d 118) (2005).

Because the prosecutor responded to Jackson's challenge by offering reasons for his decisions to strike the potential jurors, and the trial court ruled on that basis, the issue of whether Jackson made a prima facie showing of discrimination is moot. We, therefore need only address the sufficiency of the prosecutor's explanations. *Williams v. State*, 236 Ga. App. 190 (1) (511 SE2d 561) (1999). When conducting this review, we are mindful that the decision as to discriminatory intent "rests largely upon assessment of the prosecutor's state of mind and credibility" and "therefore lies peculiarly within a trial judge's province." (Citation and punctuation omitted.) Id. at 190. Consequently, we give great deference to the trial court's factual findings, which are disregarded only if they are clearly erroneous. Id.

Jackson is African-American and the victim in this case is white. The state exercised only two of its nine allotted peremptory challenges, one to strike an African-American female and the other to strike an African-American male. The trial jury consisted of four African-Americans and eight whites. An African-American also served as an alternate juror.

(i) The prosecutor explained his decision to strike prospective juror number 27, Ms. Jackson, as follows:

> Judge, as to Ms. Jackson, the state would not have struck her if we were going to try a one-day case. However, I've had some cases tried in the past, I don't know if this Court has been involved with them, where we go home, a juror comes back, and she finds out she's related to or kin to the defendant or one of the witnesses in this case. Ms. Jackson has the

same name as the defendant. She's of the same race as the defendant, and because there is a speedy trial, we only have one alternate juror, we don't know what happens. I've already been hit with a speedy trial problem, and I wanted to avoid any question that may come up tomorrow if she comes up and finds out well yeah I am kin to so-and-so, had she been here all day we would have to deal with that, and that was the basis for me striking Ms. Jackson.

In the context of a *Batson* challenge,

a prosecuting attorney's explanation, even if it is based upon mistake or ignorance, may be sufficient to rebut a prima facie *Batson* showing, so long as it is not whimsical or fanciful but is neutral, related to the case to be tried, and a clear and reasonably specific explanation of the legitimate reasons for exercising the challenges.

(Citation omitted.) *Chavarria v. State*, 248 Ga. App. 398, 401 (2) (546 SE2d 811) (2001).

The prosecutor's concern that prospective juror number 27 may have been related to the defendant was a neutral, legitimate reason for striking that juror. Cf. *Chavarria*, 248 Ga. App. at 400-402 (2) (striking prospective juror who was related to another defendant being prosecuted by the state); *Pless v. State*, 247 Ga. App. 786, 788 (3) (545 SE2d 340) (2001) (striking a prospective juror who had the same last name as a different defendant awaiting trial on the same day); *Hightower v. State*, 220 Ga. App. 165, 166 (1) (469 SE2d 295) (1996) (striking jurors because of their familiarity with the defendant and/or his family). Compare *Ridley v. State*, 235 Ga. App. 591, 592-594 (1) (510 SE2d 113) (1998) (physical precedent only) (striking of jurors who had same last name as defendants previously prosecuted by the state rejected when state otherwise excluded every African-American person from the jury panel).

While we recognize that the prosecutor mentioned juror number 27's race in his explanation of the strike to the court, he did so in the context of explaining his concern about the juror being potentially related to the defendant. Significantly, defense counsel made no further argument or comment about the propriety of the excusal after the prosecutor explained his reason for the strike. Considering the totality of the circumstances, including the composition of the jury as well as the prosecutor's failure to exhaust his peremptory challenges, the trial court's conclusion that the prosecutor did not act with

discriminatory intent was not clearly erroneous. See *Floyd*, 281 Ga. App. at 72-73; *Herrin v. State*, 221 Ga. App. 356, 358-359 (471 SE2d 297) (1996).

(ii) The prosecutor explained that he dismissed prospective juror number 28, an African-American male, because the juror had previously been convicted of giving a false name to an officer. A prospective juror's criminal history is an adequate race-neutral reason to strike a prospective juror. *Dukes v. State*, 273 Ga. 890, 891-892 (2) (548 SE2d 328) (2001); *Williams v. State*, 271 Ga. 323, 325 (2), n. 3 (519 SE2d 232) (1999). Accordingly, the trial court did not err in denying Jackson's *Batson* motion.

2. Jackson next asserts that the trial court erroneously restricted his counsel's opening argument by limiting his comments related to Bridges's plea bargain. During his opening statement, Jackson's counsel emphasized that Bridges had told four different versions of events about the night in question. He then said, "[Bridges] is a proven and convicted thief and cheat and forger, and instead of getting the mandatory ten years —." The trial court sustained the state's objection on the grounds that the defense could not discuss the mandatory minimum sentence that Bridges would have received absent a plea bargain without indirectly commenting on Jackson's potential sentence. He therefore permitted Jackson's counsel to explore both the plea bargain and the sentence that Bridges received, but precluded discussion of the statutory sentence requirements.

The following day, the trial court reversed its ruling and allowed Jackson's counsel to conduct a thorough and sifting cross-examination of Bridges with respect to all aspects of the plea bargain. Jackson's counsel subsequently went through every crime with which Bridges had been charged and queried him on the amount of prison time that he could have faced if convicted. Jackson's counsel then contrasted that time with the prison sentence that Bridges ultimately received.

Even if the trial court erroneously limited Jackson's opening statement, the error was harmless. "[I]t is axiomatic that harm as well as error must be shown to authorize a reversal." (Citation and punctuation omitted.) *Herndon v. State*, 232 Ga. App. 129, 132 (2) (499 SE2d 918) (1998). During cross-examination, Jackson's counsel seized the opportunity to thoroughly delve into the parameters of Bridges's plea bargain and thereby placed substantive evidence as opposed to mere supposition before the jury.[3] See *Brown v. State*, 246 Ga. App. 517, 522-523 (9) (541 SE2d 112) (2000) (statements made during counsel's opening are not evidence). Jackson has therefore

---

[3] Prior to opening statement, the trial court instructed the jurors that opening statements were not evidence, but rather the parties' expectations of what the evidence would show.

failed to establish that he was prejudiced by the trial court's original ruling. Cf. *Lewyn v. Morris*, 135 Ga. App. 289, 290 (1) (217 SE2d 642) (1975) (plaintiff was not harmed when the trial court erroneously restricted the use of a blackboard during his opening statement but later allowed its use).

3. Finally, Jackson argues that the trial court erred in denying his motion to suppress the victim's out-of-court identification of him in the altered photographic lineup. Jackson contends that the victim's accurate identification of Jackson by his eyes alone was not reliable because the photographic lineup did not provide her with enough information to compare Jackson's other physical traits with the remaining males depicted in the lineup. We find no merit to Jackson's argument.

Unless the evidence demands a finding contrary to a judge's determination, we will not reverse a ruling denying a motion to suppress. *Williams v. State*, 264 Ga. App. 115, 116 (1) (589 SE2d 676) (2003). Additionally,

> [c]onvictions based on a pretrial identification by photograph and a subsequent identification at trial will be set aside only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. A court need not consider whether there was a substantial likelihood for misidentification if it finds that the identification procedure was not impermissibly suggestive. An identification procedure becomes impermissibly suggestive when it leads the witness to an all but inevitable identification of the defendant as the perpetrator, or is the equivalent of the authorities telling the witness, "This is our suspect."

(Citations and punctuation omitted.) *Allen v. State*, 268 Ga. App. 519, 528 (3) (602 SE2d 250) (2004).

The trial court found that the photograph depicted six African-American males, all of whose faces were covered in substantially the same manner. The skin tone and eye color of each of the six men was essentially similar. There was nothing in the photograph itself to either point to or away from any one individual. The officer, who displayed the lineup to the victim, did not tell the victim whether the suspect would be found in the lineup, nor did he direct her attention to any particular suspect. Once the victim identified Jackson, the officer gave her no indication as to whether her identification was correct. The evidence supports the trial court's determination that the identification procedure in this case was not impermissibly suggestive.

Moreover, the victim in this case testified at the suppression hearing that she knew the identity of her attackers prior to the arrival of law enforcement. When Jackson and Bridges entered the store, they had shirts wrapped around their heads so that only their eyes were visible. Nonetheless, the victim stared directly into Jackson's eyes as he was raping her. It took her less than 15 seconds to identify Jackson from the altered photograph, which she was shown on the day of the attack. She testified that she was positive of Jackson's identity both on the day that she was shown the photograph and when she later identified him in court. Under these circumstances, the trial court did not err in admitting the victim's out-of-court identification of Jackson. See *Allen*, 268 Ga. App. at 528-529 (3); *Pinson v. State*, 266 Ga. App. 254, 261-262 (5) (596 SE2d 734) (2004).

*Judgment affirmed. Blackburn, P. J., and Ruffin, J., concur.*

DECIDED OCTOBER 3, 2007 —
RECONSIDERATION DENIED NOVEMBER 9, 2007 —

*J. Converse Bright*, for appellant.
*J. David Miller, District Attorney, Bradfield M. Shealy, Assistant District Attorney*, for appellee.