## A07A2349. PRICE v. THE STATE.
(658 SE2d 382)

BERNES, Judge.

A Cherokee County jury found Keith Price guilty of armed robbery and simple battery. Price appeals contending that the evidence at trial was insufficient to sustain the armed robbery conviction and that the trial court erred in admitting the identification evidence. For the reasons that follow, we affirm.

1. Price challenges the sufficiency of the evidence supporting his armed robbery conviction.[1] On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict in accordance with the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). "We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt." (Footnote omitted.) *Clark v. State*, 283 Ga. App. 884, 886 (1) (642 SE2d 900) (2007).

So viewed, the trial evidence shows that the victim worked at a Speed Emissions inspection station in Cherokee County. On the morning of the armed robbery, the victim heard the station's motion sensor alert and assumed that a customer had arrived. The victim was walking toward the door to greet the customer when Price pushed the door open, lifted the front of his shirt, and showed the victim the handle of what appeared to be a black handgun. Price demanded that the victim give him money and the victim complied by giving Price $80 cash and $40 in checks.

Price then forced the victim out the door where the victim's car was parked. Price looked inside the victim's car for other items to

---

[1] Price does not challenge the sufficiency of the evidence supporting the simple battery conviction.

steal, but found none that he wanted. Price took the victim back inside the station, sprayed the victim in the face with pepper spray and fled the scene.

Shortly thereafter, the victim called the police. When the police arrived, the victim gave a statement in which he described the perpetrator and the circumstances surrounding the armed robbery. The victim also developed a composite sketch of the perpetrator utilizing a computer program.

A few weeks after the armed robbery, two similar armed robberies occurred at emission inspection stations in Cobb County. In both of these armed robberies, employees were working at emission inspection stations, when a man, later identified as Price, entered the stations, displayed what appeared to be the handle of a black handgun that was tucked into his pants, demanded money, and then sprayed them with pepper spray. One of the employees saw Price flee in a burgundy Chevy pickup truck.

Price became a suspect in the investigation after his former roommate contacted a Cherokee County officer and reported that Price had used his truck, "a red or maroon Chevy Silverado," to commit the armed robberies in Cobb County. The roommate overheard Price admitting to another individual that he had committed the armed robbery of an emission inspection center and had "made the Marietta News." The roommate gave police consent to search his truck. During the search, the police discovered a plastic toy handgun. The roommate recognized the toy gun as one which he had given to Price as a gift for Price's son, but Price had painted the gun black. The roommate also furnished police with a can of pepper spray that belonged to Price.

Approximately one month after the incident, the victim returned to the police department to view a photographic lineup. The victim immediately selected Price's photograph from the lineup and stated he had "[n]o doubt" that Price was the person who had robbed him. The victim also identified Price at trial as the perpetrator of the armed robbery.

A separate photographic lineup compiled by the Cobb County investigating detective was displayed to the employees in the Cobb County robberies. Both employees immediately selected Price's photograph as depicting the person who had robbed them. These employees also positively identified Price at trial.

The above cited evidence was sufficient to sustain Price's armed robbery conviction. See OCGA § 16-8-41 (a); *Edwards v. State*, 214 Ga. App. 383 (1) (448 SE2d 51) (1994). Price nevertheless argues that there was insufficient proof that a handgun or offensive weapon was used during the robbery since the victim saw only a handle. The indictment charged Price with committing the armed robbery offense

by use of a "replica, article, and device having the appearance of an offensive weapon, to wit: a handgun, the exact description of which is unknown."

> A person commits armed robbery when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon, *or any replica, article, or device having the appearance of such weapon.* The presence of an offensive weapon or an article having the appearance of one may be established by circumstantial evidence, and a conviction for armed robbery may be sustained even though the weapon or article used was neither seen nor accurately described by the victim. What is required is some physical manifestation of a weapon or some evidence from which the presence of a weapon may be inferred. Furthermore, the test is whether the defendant's acts created a reasonable apprehension on the part of the victim that an offensive weapon was being used, regardless of whether the victim actually saw the weapon.

(Citation omitted; emphasis supplied.) *Joyner v. State*, 278 Ga. App. 60, 60-61 (1) (628 SE2d 186) (2006).

The evidence in this case meets this test. The evidence at trial showed that Price lifted his shirt and "showed [the victim] a gun" when he demanded the victim's money. While it is true that Price did not pull the weapon out of his pants, Price's display of the gun handle was sufficient to create a reasonable apprehension on the part of the victim that Price was using an offensive weapon and to cause him to comply with Price's demand for money. That the offensive weapon may have ultimately been proven to only be a toy gun is inconsequential. The evidence was sufficient to support the armed robbery conviction. See *Joyner*, 278 Ga. App. at 60-61 (1); *Mays v. State*, 198 Ga. App. 402, 403 (1) (401 SE2d 597) (1991).[2]

2. Price also contends that the trial court erred in denying his motion to suppress the victim's photographic lineup identification and the subsequent in-court identification on the grounds that the identifications had been tainted by the allegedly suggestive photographic lineup. We review a trial court's denial of a motion to suppress by construing the evidence most favorably to upholding the court's

---

[2] Compare *Butts v. State*, 153 Ga. App. 464, 465 (265 SE2d 370) (1980) (where the defendant was charged with the offense of armed robbery "by use of a gun and a knife, the same being offensive weapons," the burden was on the state to prove beyond a reasonable doubt that the gun used was an offensive weapon, as charged) (punctuation omitted).

findings and judgment, and we accept the court's ruling unless clearly erroneous. *Karim v. State*, 244 Ga. App. 282, 283-284 (2) (535 SE2d 296) (2000).

> On appeal, we will reverse a conviction based on a pretrial photo identification if the photographic lineup was so impermissibly suggestive that there exists a very substantial likelihood of irreparable misidentification. An identification procedure is impermissibly suggestive only if it leads the witness to an all but inevitable identification of the defendant as the perpetrator, or is the equivalent of the authorities telling the witness, "This is our suspect."

(Punctuation and footnotes omitted.) *Russell v. State*, 288 Ga. App. 372, 373 (2) (654 SE2d 185) (2007). See also *Jackson v. State*, 288 Ga. App. 339, 345 (3) (654 SE2d 137) (2007). Here, the trial court found that the lineup was not impermissibly suggestive and also concluded that even if it was suggestive, there was no likelihood of irreparable misidentification.

Pretermitting whether the lineup was suggestive, the trial court's finding that there was no likelihood of misidentification is supported by the record.[3]

> In reviewing these identifications, we consider the following factors established by the United States Supreme Court in *Neil v. Biggers*[, 409 U. S. 188 (93 SC 375, 34 LE2d 401) (1972)]: (a) the opportunity of the witness to view the criminal at the time of the crime, (b) the witness' degree of attention, (c) the accuracy of the witness' prior description of the criminal, (d) the level of certainty demonstrated by the witness at the confrontation, and (e) the length of time between the crime and the confrontation. The ultimate question is, whether under the totality of the circumstances, the identification is reliable.

(Citations and punctuation omitted.) *Allen v. State*, 268 Ga. App. 519, 529-530 (3) (602 SE2d 250) (2004).

Evidence at trial established that the victim had an unrestricted view of Price during the commission of the crime. Price was only one to two feet from the victim during the robbery, the robbery occurred

---

[3] The six-photographic lineup has been included in the record on appeal. It was less than ideal.

during the daytime in a well-lit area, and there was nothing distracting the victim from viewing Price's face. The victim paid particular attention to Price's facial features during the robbery. Shortly after the robbery, the victim assisted in the preparation of a composite sketch using a computer program containing various choices for each feature. Based upon his observations and memory of Price's facial features, the victim picked out each separate feature that matched the description of the perpetrator as depicted in the sketch. The composite sketch, which was introduced into evidence at trial, was very similar to Price's photo. As such, the victim's identification of Price as the perpetrator was based upon his independent memory, which the victim fairly accurately recalled in developing the composite sketch. Because there was an independent basis for the victim's identifications and there was no substantial likelihood of misidentification under these circumstances, the trial court did not err in admitting the identification evidence. See *Baugher v. State*, 212 Ga. App. 7, 14 (3) (440 SE2d 768) (1994). See also *Boatwright v. State*, 281 Ga. App. 560, 561 (1) (636 SE2d 719) (2006).

*Judgment affirmed. Blackburn, P. J., and Ruffin, J., concur.*

DECIDED FEBRUARY 26, 2008.

*Gregory A. Hicks*, for appellant.

*Garry T. Moss, District Attorney, Allen D. Morris, Assistant District Attorney*, for appellee.