A08A2372. RUTLAND v. THE STATE.
(675 SE2d 506)

BERNES, Judge.

Shawn Rutland was convicted of armed robbery, hijacking a motor vehicle, and aggravated assault. Rutland appeals from the trial court's denial of his motion for new trial, challenging the constitutionality of the nonmerger provision in the hijacking a motor vehicle statute, OCGA § 16-5-44.1 (d). He also contends that the trial court erred in denying his motion to suppress the pretrial identification evidence and that the trial court applied an incorrect

472

standard of review in considering his challenge to the weight of the evidence. As explained below, Rutland's constitutional challenge has been waived. We affirm the trial court's denial of Rutland's motion to suppress. However, we vacate the trial court's determination of the challenge to the weight of the evidence and remand this case for the trial court's further consideration of this claim.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict in accordance with the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979)." *Price v. State*, 289 Ga. App. 763 (1) (658 SE2d 382) (2008). So viewed, the evidence showed that at approximately 2:30 in the afternoon, the victim drove his car to an apartment complex to visit a friend. As the victim was leaving his friend's apartment, the victim remotely started his car. He then observed Rutland rush forward and get into his car. The victim ran up to the car and confronted Rutland. During the confrontation, Rutland showed the victim his gun and said, "this is a jack move," after which the victim retreated. Rutland attempted to drive away, but the car's kill switch activated and automatically shut off power to the car.

Rutland got out of the car and demanded the victim's car keys. The victim spent several minutes trying to convince Rutland not to steal his car, but Rutland continued to demand the keys. Eventually, Rutland cocked the gun and told the victim, "I'm not fixing to do anymore talking." Rutland then hit the victim in his head with the gun, and the gun discharged. Rutland continued pulling the trigger of the gun and shot the victim several times. The victim surrendered the keys to Rutland, and Rutland drove away in the victim's car. The victim sustained multiple gunshot wounds and life-threatening injuries and was later rushed to a hospital for medical treatment.

While investigating the hijacking, detectives received information linking Rutland, also known as "Pooh," to the crimes. Although the detectives were unable to find any recent photos of Rutland, they obtained a prior photo taken three years earlier when Rutland was in juvenile detention. The detectives interviewed Rutland's ex-girlfriend. She viewed the photo and identified Rutland as being the person depicted in the photo, but informed the detectives that Rutland's appearance had changed. She explained that Rutland had longer hair with "twisty braids" and had facial hair.

The detectives created a photographic lineup, including Rutland's photo as a potential suspect. Approximately one week after the hijacking, the detectives went to the hospital to obtain the victim's statement and to show him the lineup. After reviewing the lineup, the victim picked Rutland's photo without hesitation. The victim noted, however, that Rutland's hair was different at the time

of the incident, noting that Rutland was not well-groomed, had "more knotty hair" with "little twist braids," and had "wolfy-like" untrimmed facial hair.

A few weeks later, Rutland was arrested. His appearance at that time was consistent with the victim's description. The victim again identified Rutland at trial as the perpetrator of the crimes. The victim stated that there was "[n]ot a doubt in [his] mind" about his identification of Rutland since he was able to get a good look at Rutland during the commission of the crimes.

Following the presentation of the evidence at trial, the jury found Rutland guilty of the crimes charged.

1. In his first enumeration of error, Rutland challenges the constitutionality of the nonmerger provision of the hijacking a motor vehicle statute, OCGA § 16-5-44.1 (d). Rutland initially filed this appeal in the Supreme Court of Georgia based on his constitutional challenge to the statute,[1] but the Supreme Court determined that its jurisdiction had not been invoked since Rutland's constitutional challenge was untimely and thus had been waived. The appeal was then transferred to this court.

"[T]he Supreme Court's determination in the transfer order is final and binding." *Wilson v. State*, 279 Ga. App. 459, 461 (1) (631 SE2d 391) (2006). Rutland's constitutional challenge has been waived and consequently is not subject to appellate review.

2. Rutland contends that the photographic lineup shown to the victim was impermissibly suggestive and that the trial court therefore erred in denying his motion to suppress the identification evidence. We discern no error.

> Unless the evidence demands a finding contrary to a judge's determination, we will not reverse a ruling denying a motion to suppress. Additionally, convictions based on a pretrial identification by photograph and a subsequent identification at trial will be set aside only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. A court need not consider whether there was a substantial likelihood for misidentification if it finds that the identification procedure was not impermissibly suggestive. An identification procedure becomes impermissibly suggestive when it leads the witness to an all but inevitable identification of the defendant as the

---

[1] The Supreme Court of Georgia has exclusive appellate jurisdiction in all cases in which the constitutionality of a law, ordinance, or constitutional provision has been drawn in question. See Ga. Const. of 1983, Art. VI, Sec. VI, Par. II.

YALE LAW LIBRARY

perpetrator, or is the equivalent of the authorities telling the witness, "This is our suspect."

(Citations and punctuation omitted.) *Jackson v. State*, 288 Ga. App. 339, 345 (3) (654 SE2d 137) (2007).

Rutland argues that the photographic lineup procedure was impermissibly suggestive because the detective initially showed the victim a single photo and then showed the victim the final photographic lineup, which included a distorted version of his photo that stood out in the array.

However, the evidence adduced at the motion hearing and at trial[2] refuted Rutland's claims. The detective testified that he had never shown the victim a single photo for his identification. Although a transcript of the victim's pretrial interview reflects that the detective had stated that he was going to show the victim "a picture," the detective explained that he had made a misstatement and confirmed that he had instead shown the victim the full photographic lineup composed of six pictures as identified in the state's exhibit. Furthermore, the detective and the victim both identified the full photographic lineup and testified that it was the only display that had been shown to the victim during the pretrial identification procedure.

The detective further testified to the procedure used to create the lineup. In addition to Rutland's photo, the lineup included photos of five other males of the same race and approximate age, and having similar facial features and hairstyle. Because Rutland's original photo was smaller than the others in the array, the detective used a computerized process to enlarge it to match the size of the other photos. Enlargement of the photo made it less sharp, and therefore, the detective produced the lineup in black and white to provide more uniformity in the color, quality, and background of the photos.

While showing the lineup to the victim, the detective made no suggestion that the perpetrator was depicted in one of the six photos shown. The victim was shown the same lineup on two occasions, once while he was in the hospital and during a subsequent interview after he had been released from the hospital. He identified Rutland without hesitation on both occasions.

Based upon this evidence, the identification procedure in this case was not impermissibly suggestive. See *Jackson*, 288 Ga. App. at 345 (3).

---

[2] In reviewing a trial court's decision on a motion to suppress, we consider all relevant evidence of record, including evidence introduced at the motion hearing and at trial. See *Pittman v. State*, 286 Ga. App. 415, 416 (650 SE2d 302) (2007).

But, even if we were to assume arguendo that the lineup was suggestive, we nevertheless conclude that there was not a substantial likelihood of misidentification.

> In reviewing these identifications, we consider the following factors established by the United States Supreme Court in *Neil v. Biggers*, 409 U. S. 188 (93 SC 375, 34 LE2d 401) (1972): (a) the opportunity of the witness to view the criminal at the time of the crime, (b) the witness' degree of attention, (c) the accuracy of the witness' prior description of the criminal, (d) the level of certainty demonstrated by the witness at the confrontation, and (e) the length of time between the crime and the confrontation. The ultimate question is, whether under the totality of the circumstances, the identification is reliable.

(Citation and punctuation omitted.) *Price*, 289 Ga. App. at 766 (2).

Here, the evidence established that the victim had an unrestricted view of Rutland during the commission of the crime. The encounter occurred during the daytime, and the victim testified that he was able to get a good look at the perpetrator. The victim further testified that he had been "face-to-face" with Rutland and that he had no trouble seeing Rutland's face as they stood "directly in front of each other" for approximately three minutes during the encounter. The victim paid particular attention to Rutland's facial features during the encounter, and noted that Rutland's nostrils flared in a very distinctive manner.

The evidence thus established that the victim's identification of Rutland as the perpetrator was based upon his independent memory of Rutland's facial features. "Because there was an independent basis for the victim's identifications and there was no substantial likelihood of misidentification under these circumstances, the trial court did not err in admitting the identification evidence." *Price*, 289 Ga. App. at 767 (2). See also *Kelly v. State*, 212 Ga. App. 278, 281 (1) (442 SE2d 462) (1994); *Baugher v. State*, 212 Ga. App. 7, 14 (3) (440 SE2d 768) (1994).

3. In his final enumeration of error, Rutland contends that the trial court applied an incorrect standard of review in considering his motion for new trial challenging the weight of the evidence under OCGA § 5-5-21. We agree, and therefore, we must vacate the trial court's ruling and remand this case for further consideration on this ground.

In evaluating Rutland's challenge to the weight of the evidence, the trial court applied the standard set forth in *Jackson*, 443 U. S. at 307, whether viewing the evidence in the light most favorable to the

YALE LAW LIBRARY

verdict, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. However, this standard is applicable to appellate courts, which unlike trial courts, are limited to reviewing the sufficiency of the evidence and are precluded from evaluating its weight.

OCGA § 5-5-21 specifically empowers trial courts with the authority to weigh the evidence. It provides that a trial judge, in the exercise of a sound discretion, may grant a new trial "in cases where the verdict may be *decidedly and strongly against the weight of the evidence* even though there may appear to be some slight evidence in favor of the finding." (Emphasis supplied.) On a motion for new trial alleging this ground, the court sits as a "thirteenth juror." (Citation and punctuation omitted.) *Ricketts v. Williams*, 242 Ga. 303, 304 (248 SE2d 673) (1978). "The motion . . . is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial on this ground should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict." (Citation and punctuation omitted.) Id.

As such, when presented with a motion for new trial based upon the provision of OCGA § 5-5-21, the trial court is not limited to the *Jackson* standard, but rather is charged with the duty of exercising its discretion and weighing the evidence under the standard set forth in the statute. See *Willis v. State*, 263 Ga. 597, 598 (1) (436 SE2d 204) (1993); *Ricketts*, 242 Ga. at 304. See also *Mills v. State*, 188 Ga. 616, 622 (4 SE2d 453) (1939) ("It is the duty of the presiding judge, on motion for a new trial properly raising the point, to consider whether the verdict is . . . decidedly and strongly against the weight of the evidence[.]"); *Ogletree v. Navistar Intl. Transp. Corp.*, 221 Ga. App. 363, 365 (471 SE2d 287) (1996) (when a motion under OCGA § 5-5-21 is presented, "there must be assurance that the [trial court's] discretion was exercised").

Because the record fails to indicate that the trial court fulfilled its duty of exercising its discretion under the applicable standard set forth in OCGA § 5-5-21, we vacate the trial court's decision denying Rutland's motion for new trial on this ground and remand this case for the trial court's consideration of Rutland's claim under the proper standard.

*Judgment affirmed in part and reversed in part, and case remanded with direction. Andrews, P. J., and Doyle, J., concur.*

DECIDED MARCH 5, 2009.

*Brandon A. Bullard, Richard A. Waller, Jr.,* for appellant.
*Howard Z. Simms, District Attorney, Dorothy V. Hull, Assistant*

*District Attorney*, for appellee.