PHIPPS, Presiding Judge,
concurring in part and dissenting in part.
I concur fully in Divisions 3, 4, and 5 of the majority opinion. But because I believe the trial court committed reversible error by failing to exclude the customer’s pretrial photographic and in-court identifications of King as the perpetrator, I respectfully dissent from Divisions 1 and 2.1 concur in the judgment only as to Division 6.
“On appeal, we will reverse a conviction based on a pretrial photo identification if the photographic lineup was so impermissibly suggestive that there exists a very substantial likelihood of irreparable misidentification.”[11] A photo array is impermissibly suggestive “if it leads the witness to an all but inevitable identification of the defendant as the perpetrator, or is the equivalent of the authorities telling the witness, ‘This is our suspect.’ ”[12] As the majority notes, we review for abuse of discretion the trial court’s denial of a motion to exclude evidence of a pretrial photo identification.[13] And while “abuse of discretion” is a deferential standard of review, it “is not toothless”[14] and does not “require the appellate courts to rubber-stamp” the trial court’s decision.[15]
1. In Division 1 (a) of its opinion, the majority concludes that the photo array in this case was not impermissibly suggestive because “slight differences in the size, shading, or clarity of photographs used in an identification lineup will not render the lineup impermissibly suggestive.”[16] But the array in this case involves five qualitatively homogenous photographs of men who were not suspects, and one photograph — King’s — that plainly differs from all the others in terms of shading, clarity, background, and level of contrast. Accordingly, the array was the equivalent of the police telling the customer that King was their suspect.
The array, which was included in the record exactly as it was shown to the customer, contains six black-and-white headshots mount *552 ed on a manila folder in two rows of three. The men depicted in the array are all the same race and have the same general complexion and facial hair, but King’s picture differs markedly in quality from the other five.[17] The other five are photocopies that appear to have been cut and pasted onto a separate sheet of differently-toned paper, as a scissored gray halo outlines these men’s heads. Moreover, their images show minimal contrast between light and dark and are of such poor quality that their features are difficult to discern.[18] King’s picture, on the other hand, has no gray halo and displays a keener contrast between light and dark that renders his features — particularly his eyes — far more prominent than those of the other men. Consequently, the viewer’s attention is immediately drawn to King’s image, and the obvious conclusion is that it was taken at a different location or with a different camera than all the rest.[19]
The combination of conspicuous differences unique only to King’s picture distinguish this case from those cited by the majority, which involved only minor variations among one or two image qualities.[20] This is not a case in which multiple pictures all differ from each other in quality, suggesting that the police obtained them from various sources; here, there are five pictures with the same background, tone, shading, clarity, and level of contrast, and only one picture — King’s *553 — that looks different. Nor is this a case in which the only difference between King’s image and the others is one of shading or tone, as all the pictures except for King’s are far less clear and also contain an unmistakable scissored outline indicating that they were cut and pasted onto a different background. Finally, rather than being “slight,” the differences here are sufficiently pronounced that the viewer quickly realizes that five of the photographs came from one source, whereas King’s, alone, was obtained elsewhere. In short, “one of these things is not like the others.”[21]
Because King’s picture is the only one that stands out in these multiple, immediately visible ways, is the only one that differs in any qualitative way from the others, and arguably is the only one in which the image is shown with sufficient clarity to enable an identification, the array effectively proclaimed that King was the police’s suspect. Therefore, the array was impermissibly suggestive, and the trial court erred by finding otherwise.
2. The next question is whether, under the totality of the circumstances, the impermissibly suggestive photo array led to a substantial likelihood of irreparable misidentification.[22] Factors relevant to this inquiry include
(1) the witness’s opportunity to view the accused at the time of the crime; (2) the witness’s degree of attention; (3) the accuracy of the witness’s prior description of the accused; (4) the witness’s level of certainty at the confrontation with the accused; and (5) the length of time between the crime and the confrontation. The ultimate question is, whether under the totality of the circumstances, the identification is reliable.[23]
Here, the only factor weighing in favor of the reliability of the customer’s pretrial identification is his claim that he was certain of it.[24] The other factors uniformly go the other way.
The customer had little opportunity to view the robber. The entire incident lasted only a few minutes, and for half of that time, the customer was on the floor and had been told not to look up. The *554 robber’s face was covered from the nose down by a dark handkerchief. Although the customer testified that the handkerchief slipped down when the robber spoke to him, he clarified that it “didn’t slip all the way.” Thus, the customer never had a full view of the robber’s face.[25] And his attention could not have been focused solely on the robber, because he was able to describe the weapon in detail as a double barrel sawed-off shotgun approximately 19 to 20 inches in length. Additionally, immediately after the incident, the customer gave the police only, an approximate height and weight estimate of the robber, with no details about any facial features.[26] At trial, he testified that this very general description was the best one he could give.[27] Critically, an entire year passed between the incident and the customer’s viewing of the photo array, so his memory could not have been fresh.[28] Under these circumstances, there was a substantial likelihood of irreparable misidentification, and the trial court abused its discretion by failing to exclude the customer’s pretrial photo identification of King.[29]
3. An improper pretrial identification generally taints a subsequent in-court identification unless the in-court identification “had an independent origin” from the pretrial identification.[30] In cases in which we have found an independent origin, witnesses have testified that they knew the defendant apart from the crime or that their in-court identifications were based on their memories of the crime, not on the pretrial photo arrays.[31] There was no evidence of any *555 independent origin here. Although the customer pointed to King in court as the person who had assaulted him, the customer was not asked — and did not explain — the basis for that identification. Thus, we cannot assume that the in-court identification was not tainted by the prior, impermissibly suggestive photo array.
Decided March 30, 2016.
W. Allen Adams, Jr., for appellant.
Scott L. Ballard, District Attorney, Robert W. Smith, Jr., Assistant District Attorney, for appellee.
4. Finally, the admission of the improper pretrial and in-court identifications was not harmless error. The police never found the gun used in the robbery, and there was no physical evidence linking King to the crime. Other than the customer’s identifications,[32] the only other evidence against King was the testimony of a convicted felon, who hoped for a reward, that he had overheard King bragging about the crime. Moreover, King offered an alibi — multiple defense witnesses testified that he was at home hosting a neighborhood block party when the robbery occurred.
Because the trial court committed harmful error by admitting the customer’s pretrial and in-court identifications of King as the robber, I would reverse King’s convictions.

 Jones v. State, 303 Ga. App. 366, 367 (1) (693 SE2d 549) (2010) (punctuation and footnote omitted).

 Id. (punctuation and footnote omitted).

 See Lovelady v. State, 307 Ga. App. 788, 790 (706 SE2d 148) (2011).

 Reed v. State, 291 Ga. 10, 13 (3) (727 SE2d 112) (2012) (citation and punctuation omitted).

 Frazier v. State, 305 Ga. App. 274, 283 (699 SE2d 747) (2010) (Barnes, P. J., concurring in part and dissenting in part).

 Green v. State, 291 Ga. 287, 293 (6) (728 SE2d 668) (2012) (citations and punctuation omitted).

 The majority writes that “a witness viewing a lineup will likely be more focused on comparing the physical features of the persons depicted with his visual memory of the perpetrator than identifying different characteristics of the photographs themselves.” Maj. op. at 535 (1) (a), n. 3. But the majority provides no citation to authority or evidence to support this speculation. Even assuming that the customer could ignore the quality of the photographs in favor of their content, his ability to make a meaningful comparison of the men’s physical features was severely hampered by the poor quality of all the images save Eng’s.

 For example, one of the men may or may not be bald, and the facial features of two others are so monochromatically gray that they are nearly imperceptible.

 Indeed, the officer testified that he obtained Eng’s picture from another jurisdiction, whereas the other five came “from [his] files.”

 For example, in Green, the defendant objected that his picture in two photo arrays used to identify him was “more of a closeup shot and ha[d] more detail than the other photos.” Id. The Supreme Court rejected this claim after viewing the arrays and concluding that the differences to which the defendant referred were “indeed slight” and that “his photograph [was] not the only one in each array with as much clarity.” Id.; see also Pinkins v. State, 300 Ga. App. 17, 19 (684 SE2d 275) (2009) (qualitative differences between defendant’s photo and the others did not invalidate lineup because they were “slight” and because witnesses were told before viewing lineup not “to be distracted by any background scenery, since photographs are sometimes taken at various locations or obtained from a variety of sources”); Rutland v. State, 296 Ga. App. 471, 474 (2) (675 SE2d 506) (2009) (detective who had assembled array effectively minimized slight differences in picture quality by using a computerized process to enlarge defendant’s photo and produce the lineup in black and white “to provide more uniformity in the color, quality, and background of the photos”); Brewer v. State, 219 Ga. App. 16, 20 (463 SE2d 906) (1995) (our review of the array showed that defendant’s contention that “the picture tone of his photograph in the six-person array was demonstrably lighter than the other five” — the only difference mentioned by defendant — was “without merit”).

 Joe Raposo and Jon Stone, One of These Things, on Sesame Street Book & Record — Original Cast (Columbia Records, 1970).

 See Heng v. State, 251 Ga. App. 274, 276 (2) (554 SE2d 243) (2001).

 Id. (citation and punctuation omitted).

 We note that in light of potential problems with eyewitness identification, juries may no longer consider a “witness’s certainty in his/her identification as a factor to be used in deciding the reliability of that identification.” Brodes v. State, 279 Ga. 435, 442 (614 SE2d 766) (2005) (footnote omitted).

 Compare, e.g., Rutland, supra at 475 (2) (no substantial likelihood of irreparable misidentification where victim had “unrestricted view” of perpetrator, stood “face-to-face” with him for three minutes, paid particular attention to his facial features, and recalled that his “nostrils flared in a very distinctive manner”).

 The maj ority discounts the customer’s “lack of eloquence in describing the robber’s facial features,” maj. op. at 536 (1) (b), but there is no evidence in the record that the customer gave any description of the man’s facial features, ineloquent or otherwise.

 Compare Price v. State, 289 Ga. App. 763, 766 (2) (658 SE2d 382) (2008) (no substantial likelihood of irreparable misidentification where victim was able to describe assailant to sketch artist, who generated a composite sketch that was “very similar” to defendant’s lineup photo).

 Compare, e.g., McIvory v. State, 268 Ga. App. 164, 168 (2) (b) (601 SE2d 481) (2004) (no substantial likelihood of misidentification where victim viewed photo array three hours after robbery).

 See Sims v. State, 244 Ga. App. 823, 826 (1) (537 SE2d 133) (2000) (physical precedent only) (reversing conviction based on impermissibly suggestive pretrial identification where victim did not have a good opportunity to view burglar’s face and described him only in general terms that “were not particularly distinctive”); see also Banks v. State, 216 Ga. App. 326, 329 (3) (454 SE2d 784) (1995).

 Thompson v. State, 320 Ga. App. 46, 47 (2) (743 SE2d 24) (2013) (citation and punctuation omitted); see also Sims, supra; Tiller v. State, 222 Ga. App. 840, 841 (476 SE2d 591) (1996).

 See, e.g., Thompson, supra at 47 (2) (in-court identification was not tainted by pretrial photo array because witness testified that her in-court identification of defendant “was based on her familiarity with him as a neighbor and friend of her daughter over a period of years”); *555 Tiller, supra at 841 (in-court identification had an independent origin where witness “testified that he based his identification on seeing appellant outside the apartment’s laundry room, holding the television, and not on the picture of appellant he viewed after the burglar/’).

 One of those identifications was a voice identification that occurred after the customer was shown the photo array. But, as the majority notes, maj. op. at 547 (6) (c), the voice identification was the auditory equivalent of a one-on-one showup, as the customer was not presented with any other voices for a basis of comparison. See Butler v. State, 276 Ga. App. 161, 164 (1) (623 SE2d 132) (2005) (“a one-on-one showup is inherently suggestive”) (punctuation and footnote omitted). And because the customer had already identified King through the photo array, he must have realized that it was likely King’s voice he was hearing.