**SECOND DIVISION**
**MILLER, P. J.,**
**DOYLE, P. J., and REESE, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**January 11, 2018**

# In the Court of Appeals of Georgia

A17A1877. KING v. THE STATE.

MILLER, Presiding Judge.

Robert King, III, was convicted by a jury of incest (OCGA § 16-6-22) of his niece, M. O.[1] He moved for a new trial, alleging, relevant to this appeal, that the evidence was insufficient to support the verdict and also asserting the general grounds that the trial court should have acted in its discretion as the "thirteenth juror" to grant a new trial. The trial court denied the motion, and this appeal followed. We affirm King's conviction because the evidence was sufficient to establish the elements of the crime of incest and the necessary consanguinity between him and the victim. However, after a thorough review of the record, we must vacate and remand the trial court's order denying the motion for new trial because the trial court failed to

---

[1] King was acquitted of rape.

consider the general grounds, including its authority to sit as a "thirteenth juror," that King raised in his written motion for new trial and at the hearing on that motion.

"On appeal from a criminal conviction, a defendant no longer enjoys the presumption of innocence, and the evidence is viewed in the light most favorable to the guilty verdict." (Citations and footnote omitted.) *Wynn v. State*, 322 Ga. App. 66 (744 SE2d 64) (2013).

So viewed, the record shows that in October 2012, the then-17-year-old victim was living with her foster family in Claxton, Georgia, when she got into an argument with her foster father and ran away from home. The victim was unable to contact her biological parents, so she called King, who was her biological father's brother. King agreed to meet her and her one-year-old daughter at a drugstore that evening.

After King picked up the victim and her daughter, they got something to eat, and King purchased some diapers for the baby and undergarments for the victim. King then drove to his home, where he and the victim watched television for a few minutes before the victim decided to take a shower. When she was finished bathing, the victim returned to the living room to watch television again. The victim grew tired and asked King where she should sleep. King responded that she could sleep in the

bedroom and he would sleep on the couch. The victim and her daughter went into the bedroom to go to sleep.

Shortly after she went to bed, the victim heard King enter the bedroom and sit on the edge of the bed. He began to rub her back, telling her that he wanted to "take care" of her and that "everything's going to be okay." The victim told King to leave her alone, and he left the bedroom.

A little while later, however, King returned and lay down on the bed. Using one hand, King held the victim's hands together while he used the other arm to remove the victim's underwear. He then climbed on top of her and penetrated her vagina with his penis. The victim repeatedly told him to stop, but King continued, saying "I still love you. I'm still your uncle." When the victim's baby started crying, the victim was able to free herself. As King left the room, he told the victim, "You're still my niece."

After the victim heard King leave the house, she found a phone and tried to contact her mother and father. She finally sent a text message to her father, telling him to come get her and that her uncle had raped her.

The victim's father contacted his sister, who drove over to King's home and took the victim to another relative's home. The next morning, the victim went to the hospital.

The Georgia Bureau of Investigation ("GBI") investigated the allegations, collected the rape kit from the hospital, and conducted DNA swabs of the victim and King. In an interview with the GBI, King admitted that the victim's father was his brother, and he referred to the victim as his niece. The DNA swab taken from the rape kit showed male DNA consistent with King or another paternal relative of the victim. An examination of the underwear the victim was wearing at the time of the incident showed the presence of seminal fluid, but no sperm.

1. In his first enumeration of error, King argues that the evidence was insufficient to convict him because (a) the State failed to prove that the victim was related to him by blood; and (b) the victim recanted her story and her conduct immediately after the alleged incident was inconsistent with her claims. We disagree.

Under OCGA § 16-6-22 (a), "[a] person commits the offense of incest when such person engages in sexual intercourse . . . with a person whom he or she knows he or she is related to either by blood or by marriage as follows: . . . [u]ncle and niece or nephew of the whole blood or of the half blood." At issue here is whether the evidence, viewed in the light most favorable to the jury's verdict, established the requisite familial relationship between the defendant and the victim. We conclude that it does.

At trial, the victim's biological mother testified as to the identity of the victim's biological father, and it is undisputed that the person she identified as the victim's father is King's brother. Moreover, the victim testified that King referred to her as his niece while committing the crime, and King's own statement to GBI investigators acknowledged the blood relationship between himself and the victim. This evidence was sufficient for a jury to conclude that the victim was King's niece, and that King knew of the relationship. *Wynn*, supra, 322 Ga. App. at 68 (2). Given this evidence, it was not necessary for the State to provide DNA evidence to establish consanguinity. Id. Thus, there was sufficient evidence from which the jury could conclude that King and the victim were related by blood and that King knew of his blood relationship with the victim at the time of the crime, as is required to support King's conviction for incest.

Moreover, although the victim recanted her accusation against King in a written statement several years after she made the accusation, she explained at trial that her father had asked her to write that recantation. She then reaffirmed her original accusation. Viewing the evidence and testimony in the light most favorable to the verdict, the evidence was sufficient to support King's conviction.

2. In his second enumeration of error, King argues that the trial court should have exercised its discretion and acted as the "thirteenth juror" to grant his motion for new trial given the lack of evidence. We conclude that the trial court failed to properly consider this claim.

"Even when the evidence is legally sufficient to sustain a conviction, a trial judge may grant a new trial if the verdict of the jury is . . . decidedly and strongly against the weight of the evidence." *White v. State*, 293 Ga. 523, 524 (2) (753 SE2d 115) (2013); OCGA § 5–5–21.

> OCGA § 5-5-21 specifically empowers trial courts with the authority to weigh the evidence. It provides that a trial judge, in the exercise of a sound discretion, may grant a new trial "in cases where the verdict may be decidedly and strongly against the weight of the evidence even though there may appear to be some slight evidence in favor of the finding." On a motion for new trial alleging this ground, the court sits as a "thirteenth juror." The motion is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial on this ground should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict.

(Citations, punctuation, and emphasis omitted.) *Rutland v. State*, 296 Ga. App. 471, 476 (3) (675 SE2d 506) (2009). "In exercising that discretion, the trial judge must consider some of the things that [he] cannot when assessing the legal sufficiency of

6

the evidence, including any conflicts in the evidence, the credibility of witnesses, and the weight of the evidence." *White*, supra, 293 Ga. at 524 (2). Importantly, when the trial court's order cites to the wrong standard, simply repeats its conclusion that the evidence was sufficient to sustain the conviction, and does not indicate that it performed its duty to weigh the evidence, the trial court has failed to exercise its discretion, and we must remand the case to the trial court. See id. at 524-525 (2). Compare *Butts v. State*, 297 Ga. 766, 771-772 (3) (778 SE2d 205) (2015) (court will presume the trial court exercised its discretion even though the order denying the motion for new trial was silent as to the issue where the general grounds were argued before the trial court).

The State contends that King failed to request that the trial court act as the 13th juror, and, thus there is no merit to his claim of error. King, however, sufficiently raised the issue in his motion for new trial and at the hearing by explicitly arguing that the court should exercise its discretion to grant a new trial and addressing credibility of the witness as a basis for the court to grant the motion. *White*, supra, 293 Ga. at 524-525 (2).

In this case, the trial court erroneously stated in its order that King only argued insufficiency of the evidence at the hearing. As a result of this inaccurate

7

characterization of King's argument, the trial court addressed only the sufficiency issue and cited the appellate standard of review for sufficiency claims. See *Rutland*, supra, 296 Ga. App. at 475-476 (3). We recognize that, where an order is merely silent as to whether the court was exercising its discretion in deciding the motion, we must presume that the court considered its discretion in approving the verdict. *Butts*, supra, 297 Ga. at 771-772 (3); see also *Murdock v. State*, 299 Ga. 177, 178 (2) (787 SE2d 184) (2016) ("the trial court need not explicitly speak of its discretion with respect to the general grounds, and *unless the record shows otherwise*, we must presume that the trial court understood the nature of its discretion and exercised it.") (emphasis supplied). Here, however, the record is not silent because the trial court expressly and incorrectly stated that King had not advanced this issue at the hearing. Thus, the trial court explicitly conveyed that it did not exercise its discretion as the thirteenth juror to uphold the verdict, and no presumption attaches. See *Murdock*, supra, 299 Ga. at 178 (2).

On this record, we are constrained to conclude that the trial court failed to properly consider King's claim that it should exercise its discretion, and we must remand the case on this basis. See *Choisnet v. State*, 292 Ga. 860 (742 SE2d 476) (2013) (vacating and remanding where trial court applied the wrong standard and

8

considered only the sufficiency of the evidence despite defendant's argument that the verdict was contrary to the evidence and strongly against the weight of the evidence). Accordingly, we vacate the trial court's order denying the motion for new trial, and remand the case solely for the trial court to consider its discretion to sit as the "thirteenth juror," consistent with this opinion.

*Judgment affirmed in part, vacated in part, and case remanded. Doyle, P. J., and Reese, J., concur*.